# FREEPORT WATER WORKS CO. v. JOHN PRAGER.

APPEALS BY PLAINTIFF AND DEFENDANT FROM THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, IN EQUITY.

|     |     |
|-----|-----|
| 129 | 605 |
| 176 | -438 |
| 129 | 605 |
| 214 | [3] 74 |
| j214 | 81 |
| 129 | 605 |
| f224 | [2] 471 |

Argued October 15, 1889—Decided October 28, 1889.

[To be reported.]

1. A legislative grant of exclusive privileges is not favored by the law, and must be construed strictly; the exclusive character of the privileges conferred should not be carried by construction beyond the plain language of the grant.

2. The exclusive privilege of supplying water to the public within their respective territories, conferred upon water companies by the act of April 29, 1874, P. L. 93, exists only as against other incorporated water companies, not as against municipal corporations or individuals: Lehigh Water Co.'s App., 102 Pa. 515.

3. An individual, when authorized by the municipal authorities, has the right to lay pipes through the streets of a municipality and supply the inhabitants with water, notwithstanding the incorporation of a company for this purpose under the act of 1874.

4. When an individual has lawfully constructed a plant and commenced supplying water to the public, it would require the most unequivocal language to confer upon a water company, afterwards organized, an exclusive right as against him, even if such legislation be constitutional.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 19, 53 October Term 1889, Sup. Ct.; court below, No. 407 June Term 1885, C. P. in Equity.

On May 20, 1885, the Freeport Water Works Company, a corporation organized under the act of April 29, 1874, P. L. 93, for the supply of water to the public within the borough of Freeport, filed a bill in equity against John Prager, charging that the defendant, without authority of law and in violation of the plaintiffs' corporate rights, was supplying the public with water in said borough by means of mains and supply pipes laid in the streets thereof; praying for an injunction and for general relief. The defendant having answered the bill and issue having been joined, *Mr. Ross Reynolds, Jr.*, was appointed examiner and master.

Statement of Facts.

On February 9, 1887, the master reported, finding the following facts:

1. The Freeport Water Works Company was organized on December 29, 1882. A charter was applied for under the act of April 29, 1874, P. L. 93, and on January 12, 1883, a charter was granted said company, giving it the privilege of supplying the public within the borough of Freeport with water. Immediately thereafter a meeting of the company was called, committees appointed, and negotiations had to secure right of way and for the furnishing of necessary materials in the erection of the works. The digging of trenches, etc., was commenced on April 25th following, and on August 25, 1883, water was supplied to customers, and the company has been supplying the public, or such of them as so desire, ever since that time. The present population of Freeport does not greatly exceed 1,600. The company has about 140 customers, which would be about one half the citizens, and they require for their use some 800 barrels of water per diem. The supply of water for the company is drawn from the Allegheny river, by four- or five-inch pipes, to a height of two hundred and twenty-five feet, to tanks having a capacity of 2500 barrels. The pumping capacity of the company's works is 250,000 gallons per diem. This is four times the present demand, so that the pumps are not kept constantly in operation. The water is distributed from the tanks by four miles of two- to four-inch mains, laid through the streets of the borough, half of which mains were laid during the summer of 1883, including those on High and Fifth streets, and the remaining portion before this bill was filed. Mains are not laid through all the streets of said borough, but are in reach of every street when demand requires it. The company has expended between ten and eleven thousand dollars in the erection of its works, etc., and has ample capacity for furnishing the entire public in the borough of Freeport with water facilities.

2. In September, 1882, John Prager, the defendant, purchased from a man named John Butler, some 1,300 feet of three fourth-inch pipe, which Butler had laid from a spring on the Galbraith farm, near Freeport, for the purpose of supplying water to drill a gas well, the pipe extending from the spring over the hill to the gas well, in the form of a siphon. This

same line Prager extended from the gas well to his own house on Fifth street, in the borough of Freeport, the line from the spring to the house being about 3,500 feet in length.    He commenced digging a ditch for the pipe in the latter part of September, and had the pipe laid complete to his house in October, 1882, where the water was received in a tank of 1,600 gallons capacity, located on his own lot.    It was Prager's original intention in laying this line simply to supply his own house, but water in Freeport at that time being scarce, and wells and water carts being the sole source of supply, a number of his neighbors applied to him, when he had finished his line in the fall of 1882, and at various times thereafter, for leave to connect with his main and use the water therefrom.    This Prager agreed to, the consumers to furnish at their own expense all pipe, etc., required to make the connections, and to pay Prager from eight to ten dollars per annum for the use of the water. A majority of the persons connecting with Prager's line were residents of High street.    A few, however, who resided on Fifth street, were connected with it by means of a pipe running across a lot from High street; but the Freeport Water Works Company has mains by which all these parties who are customers of the Prager line could be supplied.    In November, 1882, this three fourth-inch pipe was replaced by a two-inch pipe about half way from Prager's house to the spring, the three fourth-inch pipe being too small to accommodate those persons using water from the line.    This two-inch pipe was buried, the former smaller pipe never having been buried in the streets. That portion of the three fourth-inch pipe from the spring to the gas well, which was brought over the hill in the form of a siphon at the time Prager purchased it, was re-located in the spring of 1883, by bringing it around the base of the hill through Prager's own property, using a two-inch pipe instead of the three fourth-inch formerly used; so that Prager now has a two-inch main the whole length of his line.    Prager laid his line as an individual, and at his own expense, costing him about $1,000, of which sum about $100 were expended subsequent to the time when the Freeport Water Works Company had obtained its charter.    His entire main line, including the extension of it on High street, was laid prior to the date of the plaintiff's incorporation, but the re-location and re-laying of the

portion between the gas well and the spring was subsequent thereto. The defendant now threatens to still further extend his line of pipe, and supply water to persons in the borough of Freeport other than those already taking it from him.

—It was averred by the defendant's answer that the mains and pipes laid by him in the streets of the borough of Freeport, were so laid with the consent of the borough council, and evidence was presented in support of this averment. The master's report, however, contained no finding upon the subject.

Upon the facts found by him, the master reported his conclusions of law, in substance as follows:

1. That clause 3 of § 34, act of April 29, 1874, P. L. 94, conferring upon water companies exclusive privileges in the respective districts covered by their charters, is not in conflict with the constitution.

2. That the privilege granted by said clause is exclusive as against individuals and unincorporated associations, as well as other private corporations. On this point, the master distinguished Lehigh Water Co.'s App., 102 Pa. 515, upon the ground that the contest in that case was between an incorporated water company and a municipal corporation.

3. That the acts done by the defendant are an infringement of the corporate rights and franchises of the plaintiff, which since its incorporation had at all times, and now has, the exclusive right and privilege of supplying water to the public within the borough of Freeport, as against all persons natural or artificial.

The master accordingly recommended that the defendant be perpetually enjoined from supplying water to the public within said borough, and especially to certain persons named who were his customers at the date of the filing of the bill, or to the properties then occupied by them, and also from further extending his line of pipe or pipes in said borough; and that the defendant be ordered to pay the costs.

Exceptions to the report of the master were filed by both parties, and being overruled by the master were renewed in court. These exceptions, after argument, were disposed of by the court, MEHARD, P. J., 35th district, specially presiding, in an opinion which after briefly stating the facts proceeded:

Opinion of Court below.

The plaintiff by this action seeks to have the defendant restrained, first, from extending his line of pipe; second, from supplying any persons with water therefrom, whether they are about to connect or have already connected with the pipe as now laid. The plaintiff bases this claim of right on the third clause of the thirty-fourth section of the act of April 29, 1874, P. L. 93, which is in the following words, viz.: . . . . .

The chief questions for consideration here are: .(1) Whether the franchises and privileges of the plaintiff corporation are exclusive, within the borough of Freeport? (2) What the franchises and privileges consist of? (3) Whether the defendant is infringing upon them in the matter complained of in the bill and shown by the proofs..

1. The first question must be answered in the affirmative unless the clause of the act of 1874, above quoted, be unconstitutional. It is contended on behalf of defendant that it is inconsistent with § 17, article I. of the constitution of 1874, and with clause 26, § 7 of article III. The latter is an inhibition of local or special laws " granting to any corporation, association or individual any special or exclusive privilege or immunity," etc. But as the act under which the plaintiff was incorporated is a general law, it would not conflict with this part of the constitution. Section 17, article I. is as follows, viz.: " No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." The plaintiff's charter was granted and accepted subject to the tenth section of article XVI. of the constitution. It may therefore be altered, revoked or annulled by the general assembly. The act of 1874 does not pretend to provide an irrevocable franchise, but one which shall be exclusive while it continues. This does not show a clear, palpable, plain violation of the constitution. It therefore follows that the act of assembly and the provision of the constitution are compatible: Speer v. School Directors, 50 Pa. 150.

2. What are the franchises and privileges to which it thus appears the plaintiff company is exclusively entitled, within the district or locality covered by its charter? The chief franchise is the right to act in a corporate capacity in effecting the object of the corporation. This is a special privilege which may not be assumed without legislative authority. The other franchises

and privileges embraced in plaintiff's charter, are set forth in the second clause of the thirty-fourth section of the act of 1874, supra, which is as follows, viz.: "Where such company shall be incorporated for the supply of water, they shall have power to provide, erect and maintain all works and machinery necessary or proper for raising and introducing into the town, borough, city or district where they may be located, a sufficient supply of pure water, and for that purpose may provide, erect and maintain all proper buildings, cisterns, reservoirs, pipes and conduits, for the reception and conveyance of water; and they are authorized and empowered by themselves, their agents, engineers and workmen, and with their tools, carts, wagons, beasts of draught or burden, to enter upon such lands and inclosures, streets, lanes and alleys, roads, highways and bridges, as may be necessary to occupy, or to obtain material for the construction of said works, and to occupy, ditch and lay pipes through the same, and the same from time to time to repair, subject," etc. It will be observed that the first part of this clause defines the scope of the powers of the corporation, while the second part confers franchises and privileges for the purpose of enabling the corporation to exercise those powers. It should also be borne in mind that the powers of a corporation are such only as are expressly granted, and may therefore be such as natural persons have of common right; but a franchise or privilege, distinctively, is, according to Blackstone, Book 2, page 37, "a branch of the royal prerogative subsisting in the hands of the subject." In other words, it is something created by sovereign grant which would not otherwise exist in the hands of the subject. Thus, natural persons may of common right provide, erect and maintain all works, machinery, buildings, cisterns, reservoirs, pipes and conduits necessary or proper for raising and introducing into a town, etc., a sufficient supply of water; but only through a grant of sovereign power could they "enter upon such lands and inclosures, streets, lanes and alleys, roads, highways and bridges, as may be necessary to occupy, or to obtain materials for said works, and to occupy, ditch and lay pipe through the same, and the same to repair." Inasmuch as charters must be strictly construed: Commonwealth v. Erie etc. R. Co., 27 Pa. 339, the words "franchises and privileges" as used in the third clause of § 34 of this act are to be taken in a distinctive sense. They are, then, the right to act in

a corporate capacity and the rights embraced in the part of the second clause just quoted.

3. Is the defendant violating the plaintiff's rights, or will it be such violation if defendant still further extends his line of pipe ?

It is contended on behalf of defendant that the franchises and privileges made exclusive by the clause of the act of 1874, relied on by plaintiff, are so only as against other incorporated companies, and not as against natural persons. In support of this position the case of the Lehigh Water Co.'s App., 102 Pa. 515, is cited. . . . .

If I rightly understand this decision, it is to the effect that, inasmuch as the power to provide a supply of water for the use of its inhabitants is incident to a borough by virtue of its incorporation: Act of April 3, 1851, P. L. 320, the thirty-fourth section of the act of April 29, 1874, would not be so construed as to abrogate this power ; but I do not understand it to be said or implied in that decision that a private person or unincorporated company, could interfere with the franchises or privileges of a corporation created under that part of the act of 1874. On the contrary, if the meaning of the terms franchises and privileges, has been correctly ascertained in this opinion, they are such as may be exercised only through special grant from the sovereign power. Moreover, if the sovereign were under obligation, after making such grant to one for a specific purpose, not to make such grant to another for the same purpose, this would stand in the way of a borough conferring a right which would fall within the limits of the franchises and privileges already exclusively granted. Thus, as the plaintiff company, by virtue of its charter, acquired the exclusive right to enter upon the streets and alleys of Freeport, for the purpose of laying pipes, etc., to supply water to its inhabitants, the borough authorities could not thereafter lawfully permit the defendant to lay pipes in the public streets and alleys for the same purpose. These are public highways ; and, although under the control of the borough, they are subject to the paramount authority of the commonwealth : Southwark R. Co. v. Philadelphia, 47 Pa. 314 ; Commonwealth v. Central Passenger Ry. Co., 53 Pa. 517.

On behalf of plaintiff it is contended that the defendant is infringing upon plaintiff's right by permitting his neighbors to connect with his water pipe, for the reason that the plaintiff

has the exclusive franchise of supplying water to the public within the borough of Freeport. This I think, is confusing the franchise with the purpose for which it was granted. It is true its franchises and privileges were granted to this water company, in order to enable it to supply water to the public within the borough of Freeport; but an exclusive grant of facilities which are ordinarily necessary to enable a company to supply the public with water, is not synonymous with an exclusive right to furnish such supply. Hence the defendant has a right to furnish water to as many of the citizens of Freeport as he sees fit, and the plaintiff has no ground to complain so long as defendant does not violate plaintiff's franchises and privileges as above ascertained.

[Measuring the facts by these conclusions, it appears: (1) That inasmuch as defendant's water pipe, so far as it is laid in the streets of Freeport, was laid as it now exists, before the plaintiff company was incorporated, it was not laid in violation of any right vested exclusively in the plaintiff. (2) Inasmuch as the plaintiff has not an exclusive right to furnish water to the inhabitants of Freeport, it is not a violation of its franchises or privileges for defendant to permit his neighbors to connect with his water pipe. (3) Inasmuch as the plaintiff has been granted the exclusive right to enter upon the streets and alleys of Freeport for the purpose of occupying, ditching and laying pipes through the same in order to supply water to the inhabitants of said borough, the defendant cannot lawfully extend his water pipes through these public streets or alleys beyond the point of their present terminus.[a] Therefore, the injunction prayed for is granted, so as to restrain the defendant, his agents, laborers and workmen from extending defendant's lien of water pipe through the streets or alleys of the borough of Freeport beyond the point of its present terminus.[b]

In other particulars the injunction is refused.

In view of the whole case as it has come before the court, it is considered just and equitable that the costs should be borne equally by the parties; for this suit was caused by both parties claiming more than their right, if the foregoing opinion is a correct exposition of the law. It is therefore ordered, adjudged and decreed that the plaintiff and defendant each pay one half of the costs of this suit.[c] The learned master discharged his

arduous duties faithfully and efficiently.   It is ordered that his fee be taxed at $100.] [6]

Thereupon the plaintiff took the appeal to No. 19, specifying that the court erred :

1. In not confirming the report of the master and entering the decree recommended by him.

6. In the portion of the opinion and decree in [ ] [6]

The defendant took the appeal to No. 53, assigning for error :

1. The conclusion of law (3) set out in the opinion of the court.[a]

2. The order granting an injunction against the defendant.[b]

3. The order as to the payment of the costs.[c]

*Mr. Joseph Buffington* (with him *Mr. George M. Hill* and *Mr. Orr Buffington*), for the Freeport Water Works Co. :

1. Is the plaintiff's privilege of supplying water to the public in Freeport an exclusive one?   What are the franchises and privileges which, under the act of April 29, 1874, P. L. 93, are to be exclusive?   The court below took the contracted position that they were only the privilege of being a corporation and the right of eminent domain, a view which gives two incidental rights but ignores the very purpose for which the corporation is formed under the act, viz., the supply of water to the public.   To say that the furnishing of this supply, which is the raison d'etre of the corporation, is not one of its privileges and franchises, strikes one as contradictory.

2. The act gives an exclusive privilege in but few cases.   The building of bridges, and water and gas works, alone, things which require large outlays, have an exclusive privilege for a reasonable time, and only until from their dividends a fair return is had.   The object of the act was to foster industries of this kind in smaller towns, pursuing, the policy indicated by this court in Chincleclamouche Co. v. Commonwealth, 100 Pa. 444.   Its wisdom is shown by the fact that to-day water and gas works have sprung up in every village, relying upon this exclusive privilege, which, however, is carefully guarded.   If the position of the lower court is right, a water company would far better be unincorporated, for its advantages as a corporation are virtually none, while its disadvantages are many.

3. The same exclusive privileges of corporate existence and eminent domain are given to bridge companies by the act of 1874. Will it be pretended that other bridges could be built near them and take tolls? Yet that is the effect of the learned court's opinion. It must be presumed that some object was intended to be brought about by a statute, some change or modification of existing laws. But the act of 1874 virtually makes no change in the legislation respecting water companies, save by granting the exclusive privilege, which did not exist before. Under the acts of March 11, 1857, P. L. 77, and April 24, 1869, P. L. 93, they had the right of eminent domain and all the other powers contained in the act of 1874, except the privilege of excluding others, and were subject to practically the same regulations as now.

4. Prior to the new constitution, the mischief which required a remedy in connection with such corporations, was the unlimited grant of exclusive privileges by the legislature. The remedy was the granting of such privileges with proper limitations and safeguards. It was for this purpose that the act of 1874 was passed, and the whole act should be construed so as fairly to carry out the object in view: Wilkland v. Leland, 2 Pet. 661; The Emily and Caroline, 9 Wheat. 388. In § 25 of this act it is provided that charters shall have the same force and effect, and the franchises granted shall be construed according to the same rules, as if the corporation were created by a special act of the legislature. If the franchises and privileges given to the plaintiff had been conferred by a special act prior to 1874, no one would doubt that its right to supply the public is exclusive.

5. This court has already decided our claim to an exclusive privilege of supplying water, in Scranton etc. Co.'s App., 122 Pa. 174, for unquestionably the clause of the act considered in that case includes water companies. The evidence shows that after the plaintiff's incorporation Prager's line was changed in its route, and was altered from a three fourth-inch siphon line to a two-inch gravity line. He does not have his works in the status they were in at the time of our incorporation. If he can thus enlarge their capacity, he can enlarge to any size. To enjoin him from furnishing water will not deprive him of any property; it will leave him with his pipe as it was, and

simply prevent him from interfering with the franchise granted to us. The state had a right to grant this franchise and deprive him of the right to infringe it: Washington etc. Turnpike Co. v. Maryland, 3 Wall. 213. Moreover, the court should not have divided the costs.

*Mr. M. F. Leason* (with him *Mr. J. A. Mc Culloch* and *Mr. J. H. Mc Cain*), for John Prager:

1. Clause 3, § 34, act of April 29, 1874, P. L. 94, is unconstitutional as conflicting with § 7, article III. of the constitution, which prohibits any local or special law granting any special or exclusive privilege or immunity. This question was raised, but not decided, in Emerson v. Commonwealth, 108 Pa. 111. The clause referred to gives this water company the exclusive right to exercise the franchises and privileges contained in its charter, and forbids the granting of a similar charter covering the same territory to another company, until the happening of certain contingencies entirely within the control of the grantee. These exclusive franchises, therefore, may be deemed perpetual. This enactment is special legislation in its most odious form. It creates a certain class of corporations, and then grants them rights and privileges to the exclusion of all others and to the detriment of the public, as well as of the individual citizen. It is as much special legislation as if passed for the benefit of the plaintiff alone.

2. The exclusive privileges mentioned in the act are exclusive only as against other and similar corporations, and not as against individuals: Lehigh Water Co.'s App., 102 Pa. 527. The court below understands the language of the opinion in the case cited to be restricted to municipal corporations. But the same reasons given by this court to show that the franchises are not exclusive against municipal corporations, apply with equal force in favor of individuals. The defendant, having laid his pipes with the permission of the proper borough authorities, and invested his money in a plant for the supply of water, and being in receipt of a revenue therefrom, had a property in his plant and business, which could not be taken from him without just compensation: Constitution, article I., § 1; article XVI., § 8. The act of 1874 must be so construed as not to interfere with constitutional rights; if it cannot be so

Opinions of the Court.

construed, it must fall, so far as it conflicts therewith. The defendant was engaged in a lawful and legitimate business, which every citizen has the right to pursue and cannot be deprived of by any legislative enactment.

3. Grants of special franchises and privileges, in derogation of common rights, are to be strictly construed: 1 Morawetz on Corp., § 323 ; Commonwealth v. Erie etc. R. Co., 27 Pa. 351 ; Scranton etc. Co.'s App., 122 Pa. 175. The act of 1874 was never intended to prohibit a man from selling water out of a cart. Yet such is the logical conclusion, on the construction contended for by the plaintiff ; for it is immaterial whether the water is brought to a consumer in a water cart, or through pipes buried in the ground. The court below inquired what the plaintiff's franchises and privileges consisted of. In the bill and the master's report no other privilege or franchise than that of supplying water is alleged or found. The charter was not in evidence and it was error for the court to assume that it contained all the franchises mentioned in the act of 1874 : Emerson v. Commonwealth, 108 Pa. 111. The franchise contended for by the plaintiff as exclusive, was the right to supply water. Having found that the plaintiff had not such exclusive right, it should have dismissed the bill with costs to the defendant.

WATER WORKS CO.'S APPEAL.

Opinion, Mr. Chief Justice Paxson :

The Freeport Water Works Company, appellant in this case, was duly incorporated on January 12, 1883, under and by virtue of the provisions of the act of assembly approved April 29, 1874, for the purpose of supplying the borough of Freeport with water. An organization was had under its charter, works were erected, and the company is now furnishing water to those of the inhabitants who desire to take it. This bill was filed in the court below against John Prager, the appellee, for the purpose of restraining him from supplying water to the inhabitants of Freeport, the company alleging that it has the exclusive privilege of doing so. The appellant bases this claim of right on the third clause of the thirty-fourth section of the act of April 29, 1874, P. L. 93, providing for the incorporation of water and gas companies. The said clause of said section is as follows : " The right to have and enjoy the franchises and privileges of

such incorporation within the district or locality covered by its charter shall be an exclusive one ; and no other company shall be incorporated for that purpose until the said corporation shall have from its earnings realized and divided among its stockholders, during five years, a dividend equal to eight per centum per annum upon its capital stock," etc.

The appellee is the owner of a spring of water situate near the borough, the water from which is conveyed through pipes on his own land to the borough.   With the consent of the borough authorities, he has laid his pipes through a portion of the streets, and is supplying those of the inhabitants with water who desire it.   His introduction of the water into the borough was prior in point of time to the charter of the water company.

The act of April 29, 1874, was before this court for consideration in Lehigh Water Co.'s Appeal, 102 Pa. 515.   In that case a bill in equity had been filed by the Lehigh Water Company to restrain the borough of Easton from constructing water works to supply the inhabitants of said borough with water ; the allegation there being, as it is here, that by the act referred to an exclusive right was vested in the water company to supply the water, not only as against other water companies, but also as against the borough itself.   The contention of the water company was not sustained, this court saying : " While the language from the act of 1874, above quoted, would seem to favor the exclusive right claimed by the water company, a careful examination of clause 3 of section 34 shows that the legislature intended that the right should be exclusive only as against other water companies ; for, immediately in this connection occur the words, ' and no other company shall be incorporated for that purpose until the said corporation shall have from its earnings realized and divided among its stockholders, during five years, a dividend equal to eight per centum per annum upon its capital stock.'   The provision that another company shall not be incorporated was not intended to prohibit a city or borough from providing its citizens with pure water, by means of works constructed by itself from money in its own treasury."

A grant of exclusive privileges is not favored by the law, and must be construed strictly.   It should not be carried by construction beyond the plain language of the grant.   In the act of 1874 the exclusive character of the grant is qualified

and limited by the clause above quoted, by which the formation of other water companies is prohibited until the company first in the field shall have realized an eight per cent dividend for five years; and the prohibition of other water companies negatives the idea that it was intended to apply to other than those companies.

If we were to give the act of 1874 the construction claimed for it, the consequences might be serious to private rights. The defendant below was engaged in this business before the Freeport Water Works Company was chartered. He had laid his pipes, and was actually supplying a number of persons with water; and, with the consent of the borough, had laid down in the street some 3,500 feet of main, and several hundred feet of service pipe. He had expended some $1,200 in the work. The amount is not material. The principle is the same as though he had expended a million. This company then was organized, and says to him, in substance: "You must stop this work. We have the exclusive right to supply this borough with water; and, although you have established this business and expended your capital upon it, we claim to take it from you, and practically destroy your investment." Is it possible for corporate greed to go further than this? It would require the most unequivocal language on the part of the legislature to confer such a right; and, when it is so conferred, we may perhaps examine into the constitutionality of an act which, without compensation, ruthlessly confiscates private property for the benefit of a corporation, without any pretence that the business so confiscated is injurious to the public welfare, or that such act was in the exercise of the police power of the state.

The evident object of the act of 1874 was to encourage the formation of water companies to supply the inhabitants of small towns with water, and to that end prohibited the formation of rival companies until they should have become profitable; but it was never intended that said companies should interfere with rights vested prior to their formation, nor to place municipal corporations at their mercy for a supply of water. In this view, the law is wholesome, and can do no harm. In the view contended for, it might become an engine of oppression.

The decree is affirmed, and this appeal dismissed, at the costs of the appellant.

PRAGER'S APPEAL.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was an appeal by the defendant below from the same decree as that of the water works company, just decided. While the court below sustained the defendant in the main, yet the injunction was allowed to stand, so as to restrain him from extending his line of water pipe through the streets or alleys of the borough of Freeport, beyond the point of its present terminus. We have said all that was necessary in the appeal of the water company. The doctrine of that opinion is fatal to this injunction. We are of opinion that the defendant has the right to lay his pipes through any of the streets of the borough, when authorized by the municipal authorities, and to supply its inhabitants with water. The borough is not here complaining. Upon this appeal

> The decree below is reversed to the extent that it continues the injunction, and the bill dismissed; the costs here and below to be paid by the complainants in the bill.