## Appeal of Lynch et al.

97 349
d 36 SC 187

97 349
38SC ∘ 52

1. A court of equity will not decree the rescission of a contract for the sale of real estate except upon the ground of mutual mistake or misrepresentation and fraud so clearly demonstrated as to leave no room for hesitation or doubt.

2. Where in such case neither of the parties has dealt fairly with the other a chancellor will not interfere in behalf of either of them, but will leave them to their legal remedies if any such they have.

3. A., desiring to purchase coal land, went with B., a duly authorized agent of C., on a tract of land belonging to C., and was then informed by B., who professed to be familiar with coal lands that there was coal upon that land. Subsequently A., professing to wish the land for another purpose, had an interview with C., in the course of which the latter stated his belief that there was coal on the land and that he had been so informed by a practical miner. The land had never been developed or tested for coal. The interview with C. ended in the purchase of the property by A., under articles of agreement which conferred full mining rights. Subsequently A. discovered that there was no coal on the tract, and thereupon filed a bill against C., praying a rescission of the articles of agreement: *Held*, that the case was not a proper one for a decree in accordance with the prayers of the bill.

4. Fisher *v.* Worrall, 5 W. & S. 478, and Smith *v.* Richards, 13 Peters 26, distinguished.

March 8th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Luzerne county.* Of January Term 1879, No. 151. In Equity.

Appeal of I. V. Lynch, J. C. Miles and John W. Miller from a decree of the said court, confirming a master's report and directing that certain articles of agreement under seal between the appellants and Victor Koch be rescinded. By said articles, dated September 4th 1873, the said Lynch, Miles and Miller agreed to sell to said Koch " the coal lying in, under and upon " a certain tract of land situate in the township of Blakely, county of Luzerne, * * * " with all the privileges of mining and transporting the same, with the full and free right to enter upon said land, sink shafts, &c., if necessary," in consideration of $6000, of which $500 was to be paid at the execution of the agreement, and the remainder in semi-annual instalments, with interest. Koch made the first payment of $500 as stipulated, and entered into possession. Koch subsequently filed a bill in equity to April Term 1874, against said Lynch, Miles and Miller, alleging that he had been induced to make the said purchase by misrepresentations of the defendants and of one W. H. Stanton, who acted as their agent, to the effect that there were at least three veins of coal running through the said tract, all of which were practicably workable. That the plaintiff had since discovered that the only coal in the tract is a little under one corner, which could not be practically

[Lynch's Appeal.]

worked.   The bill prayed the rescission of the agreement, and that
the defendants be compelled to repay the plaintiff the amount he
had paid under the contract.

The answer denied the misrepresentations as alleged, and denied
the authority of Stanton, as agent of the defendants, to make the
representations.

The cause was referred to a master, who reported substantially
that Stanton was agent of the defendants, and visited the premises
in company with Koch ; that there had been no development of the
land, experimental or otherwise, to test the existence of coal, but
that Stanton, claiming to be familiar with coal lands, asserted that
there were three underlying veins of. coal, in which statement of
opinion Koch put entire faith.   On the next day Koch and Stan-
ton went to see the defendants, and on their way arranged between
them that Koch should represent that he intended to buy the
surface for the purpose of a summer resort ; that he was indifferent
as to the coal, but would like to purchase the defendants' interest
in the same to avoid the annoyance of parties prospecting for it,
under any outstanding mining right.   At the first interview no
representations were made by defendants as to the existence of
coal, but the parties were unable to agree as to the price.   Koch
offered $4000 and the defendants demanded $6000.   The parties
again met September 4th 1873.   After some discussion " the
defendants asserting their belief in the existence of coal, and one
of them stating that he had been informed by a practical miner
who had seen the property, that there were three veins of coal
upon it," Koch acceded to the defendants terms, and the agree-
ment in question was executed.   The master found as a fact that
there was only a small quantity of coal in the land in such con-
dition as not to be workable.   The master reported that the de-
fendants were bound by Stanton's representations, which were
untrue in fact ; that the plaintiff, relying upon them, was induced to
enter into the contract ; that the defendants were not deceived by
the plaintiff's talk in their first interview about a summer resi-
dence.

On the question of the effect of Stanton's representations, the
master reported as follows : " It is not every misrepresentation of
a fact that will avoid a contract, upon the ground of fraud, if it be
of such a nature that the other party had no right to place reliance
on it.   Now, the master confesses that during the whole progress
of the case, his impressions on this point were all against the
plaintiff, and with the defendants, and that the rule of *caveat
emptor* applied.   This view was strengthened by the language of
the present chief justice in the case of Watts *v.* Cummins, 9 P.
F. Smith 91.   Perhaps a case more analogous to the present one
is that of Fisher *v.* Worrall, 5 W. & S. 478, where it is held sub-
stantially that a misrepresentation by a vendor of an occult qual-

ity in land, although made in ignorance of the truth, and although the vendee agrees to run the risk of this, is, in an action to enforce specific performance of the contract of sale, a decisive objection to the plaintiff's recovery. * * *

"Untrammelled by the decisions, the master would hold that the most positive assertion of the existence of coal, where it was apparent to all parties that there was no development of the premises, should be treated as opinion only, and though confidently expressed and relied on by the other party, yet as affording no real ground for relief in equity. He believes, however, that the decisions settle it otherwise, and upon the authority of Fisher v. Worrall, *supra*, which the master concludes is not overruled or even materially modified by Watts v. Cummins, and must therefore be regarded as still the correct exposition of the law as held in this state, the master reaches the conclusion, though with much hesitation, that the plaintiff had a right to rely on the statements made by Stanton as to the existence of coal, and that being untrue, it matters not whether the misrepresentation was intentional or otherwise. * * * The plaintiff had a right to rely upon them, and in fact did rely upon them, and purchased, believing them to be true. It follows that the plaintiff is entitled to have his contract with the defendants rescinded, and the master, therefore, in conclusion, reports that, in his opinion, it is proper to decree that, so far as said contract remains unexecuted by the actual payment of the purchase-moneys, the same be rescinded and delivered to be cancelled; but that the prayer for the repayment of the $500 be denied."

Exceptions filed to this report were, after argument, dismissed by the court, and the decree reported by the master confirmed, whereupon the defendants took this appeal, assigning for error, the dismissal of their objections and the entry of the decree.

*J. Vaughan Darling* (with him *E. P. Darling, Isaac P. Hand, and J. G. Miller*), for the appellants.—The alleged misrepresentations of Stanton were not such as to authorize a rescission of the contract. They concerned an occult quality in the land, and at best could be matter of opinion only. The master and the court below felt themselves bound by the decision in Fisher v. Worrall, 5 W. & S. 478, but that case was in effect an attempt to enforce specific performance of a contract, and there is a wide difference where the attempt is to induce a chancellor to rescind a contract on the ground of fraud: Graham v. Pancoast, 6 Casey 89; Bispham's Eq. 203; Coil v. Pitts. F. College, 4 Wright 439; Watts v. Cummins, 9 P. F. Smith 91; Cummings's Appeal, 17 Id. 404; Clark v. Everhart, 13 Id. 350.

*A. Ricketts*, for the appellee.—The contract was for the sale of "the coal lying in, under and upon" the tract, with the right to

mine it. The master has found that there was no coal in the land which could be mined. The plaintiff was deceived by the misrepresentations of the defendants and their agent Stanton, and was entitled to a rescission of the agreement and to the return of his partial payment of purchase-money.

Mr. Justice GORDON delivered the opinion of the court, March 21st 1881.

This is a case where the court below, in the exercise of its equity powers, has undertaken to rescind a contract under seal between the defendants, Lynch, Miles and Miller, of the one part, and the plaintiff, Victor Koch, of the other part, for the sale of all the coal lying under one hundred acres of land therein described. This could be done only on the ground of mutual mistake, or misrepresentation and fraud, and of these the evidence should be so clear as to leave no room for hesitation or doubt in the mind of the court. If there be any such hesitation or doubt the bill ought to be dismissed, and the parties turned over to their legal remedies. Herein it is, that we think both the master and the court below fell into a mistake.

The decree was based on certain representations, alleged to have been made by W. H. Stanton, who, as the master found, was acting as the agent of the defendants in the sale to Koch, but he has not found that these representations were, at that time, known by either Stanton or his principals to be misrepresentation. The master says : " Arrived upon the ground, Stanton, claiming to be familiar with coal lands, asserted that there were three underlying veins of coal, though it was apparent there was no development of the land, or evidence of its having been subjected to any test to determine the existence or non-existence of coal. Koch, however, was evidently impressed with Stanton's sagacity, and put entire faith in the latter's opinion."

It is thus quite obvious that Stanton's representations were not and did not profess to be of known facts, but were expressions of opinion only. It is true he may have impressed Koch with the idea that he was an expert, and thus may have given to his opinions a weight which they otherwise would not have had, nevertheless they were but opinions, and were not represented as facts. Indeed such could not well be, for Koch was upon the land, and could, and did see for himself, that the land was not developed. He, therefore, knew certainly that Stanton's representations were merely the expressions of his opinions. Then, when he met with the defendants in person, they dealt with him at arms' length ; they made no representations whatever ; they had what they believed to be a coal reservation to sell ; to them Koch professed to be utterly indifferent whether it contained coal or not, representing that his object was to acquire their right for the purpose of reliev-

[Lynch's Appeal.]

ing the surface, which he alleged he was about to buy, from intrusion by those who otherwise might enter to prospect a mine. Under such circumstances as these a chancellor might well hesitate about the rescission of a solemn contract of the parties. It may be admitted that the agent of the defendants did attempt to impose on the plaintiff by representations which he ought to have known to be false, and which he certainly did not know to be true; on the other hand it is an uncontroverted fact, that the plaintiff approached the defendants with a falsehood in his mouth in order to conceal his true purpose, and get their claim for as low a price as possible.

Here then is more than doubt; neither of the parties is acting fairly with the other, hence a chancellor will interfere for neither. Under such conditions he will interpose neither to execute nor rescind their contract, but will leave them to their legal remedies, if any such they have.

But there is another principle involved in this case which seems to have been overlooked by both master and court, and that is the wide difference between the facts and circumstances necessary to move a chancellor to refuse the execution of a contract, and those necessary to induce him to rescind it. In the one case interposition will be refused on the ground of improvidence, surprise or even mere hardship; in the other a court will act only on the ground of fraud, illegality or mistake; Graham v. Pancoast, 6 Casey 89; Edmonds's Appeal, 9 P. F. Smith 220; Yard v. Patton, 1 Harris 278; Stewart's Appeal, 28 P. F. Smith 88; Rockafellow v. Baker, 5 Wright 319.

The master confesses "that during the whole progress of the case, his impressions on this point were all against the plaintiff, and with the defendants, and that the rule of caveat emptor applied." He, furthermore says, that he reached the conclusion that the plaintiff had a right to rely on the statements made by Stanton, as to the existence of coal, with much hesitation. This hesitation was overcome by what he supposed the binding authority of Fisher v. Worrall, 5 W. & S. 478, and Smith v. Richards, 13 Pet. 26. But the former was a case of specific execution, and the latter one of plain misrepresentation and fraud, so that neither was in point. On all authority then this very hesitation should have led him to a different result. It might well be, especially if the testimony of Vanhooser is to be believed, that neither a chancellor nor a court and jury would enforce this contract against Koch, but under all the circumstances, especially in view of the fact that Koch himself approached the defendants with falsehood and misrepresentation, though perhaps they were not deceived thereby, yet as it may have induced them to deal with him differently from what they would otherwise have done, a chancellor will refuse his interposition to relieve him by the rescission of his contract.

The decree is reversed, and the bill dismissed at the costs of the appellee.