# Rossmassler et al., Appellants, *v.* Spielberger et al.

*Equity—Practice, equity—Preliminary matters.*

1. All preliminary matters should be disposed of before a case in equity is tried.

*Interest—Usury—Purchaser for value of securities.*

2. Usury cannot be predicated of an agreement which provides not only for the repayment of money due, but also for the performance of services by the lender which are not to be otherwise compensated.

3. A purchaser for value, at the request of a borrower, obtains a good title to the securities purchased, though, as between the original payer and payee, the contract was usurious.

*Appeals — Trial — Pleadings — Equity — Matters not raised by pleadings.*

4. Ordinarily questions not raised by both pleadings and proofs should not be considered at the trial of a case in equity, but where the parties and the court below treat it as if they had been so raised, the appellate court will do likewise.

5. Matters determined by the court below, which are not disadvantageous to appellants, will not be considered on their appeal.

*Contracts—Uncertainty—Duration of contract—Corporations—Profits—Dividends—Maxim—Id certum est, etc.*

6. A contract will not be held void for uncertainty because the period of its duration is not specifically stated therein, if it is possible to decide otherwise.

7. The period of duration of a contract, if not specifically stated therein, will be determined from the nature of the subject-matter involved, unless the contract itself compels a different conclusion.

8. Where no period of duration is expressed in an agreement, neither party can determine it without the consent of the other, unless the contract itself indicates with sufficient clearness that they must have intended otherwise.

9. Ordinarily the silence of a contract as to its period of duration sufficiently expresses the intention of the parties that it shall be perpetual.

10. Where an agreement provides that the vendee of stock shall pay to the vendors a sum of money out of the profits of the corporation, before any dividends are received by the vendee, and no term of duration is expressed, the contract will continue so long as the corporation exists.

Argued February 9, 1921.  Appeal, No. 248, Jan. T., 1921, by plaintiffs, from decree of C. P. No. 2, Phila. Co., Sept. T., 1919, No. 5622, dismissing bill in equity, in case of Susan W. Rossmassler (nee Susan W. Nice) and Katherine S. Nice Ellis v. Louis N. Spielberger et al., voting trustees and Franklin B. Kirkbride, assignee of creditors.  Before Moschzisker, C. J., Frazer, Simpson, Sadler and Schaffer, JJ.  Affirmed.

Bill in equity for injunction, and for cancellation of voting trust certificates and certificates of stock and for general relief.  Before ROGERS, J.

The opinion of the Supreme Court states the facts.

The court entered a decree dismissing the bill.  Plaintiffs appealed.

*Error assigned,* inter alia, was above decree, quoting it.

*Jos. J. Brown* and *Henry P. Brown,* with them *John Franklin Shields, Frederic L. Clark, Andrew R. McCown, Frank R. Schrenk* and *Thomas S. Lanard,* for appellant. —The alleged contract upon which depends Kirkbride's title to all the voting trust certificates, is void for uncertainty: Briggs v. Morris, 244 Pa. 139; Albright v. Albright, 228 Pa. 552.

It is void because of the legal impossibility of complying with its terms: Wilson v. Getty, 57 Pa. 266.

It is usurious: Hartranft v. Uhlinger, 115 Pa. 270.

. The case on appeal must be decided on the same theory on which it was tried: Brandon v. McKinney, 233 Pa. 481; Big Spring Electric Co. v. Kitzmiller, 268 Pa. 34; Clark v. Steele, 255 Pa. 330; Rahm's Est., 226 Pa. 594; Floyd v. R. R., 60 Pa. Superior Ct. 1; MacKeller v. Seeds, 10 Pa. Superior Ct. 167; Weiskircher v. Connelly, 256 Pa. 387; Foehr v. R. R., 40 Pa. Superior Ct. 7.

*A. T. Johnson* and *Stevens Heckscher,* of *Duane, Morris & Heckscher,* for appellee.—Plaintiffs' bill discloses no equity entitling them to relief: Thompson's App., 126 Pa. 371; Caveny v. Curtis, 257 Pa. 575.

Kirkbride, through purchase for value of the Steele claim and rights, which included one-half of the stock of the Nice Company awarded outright to Steele under the Creditors' Extension Agreement, became the purchaser of the Steele half of the stock; and such purchase was not dependent upon the promise or condition to re-

serve annually to the old stockholders $25,000 of the net earnings of the company, or upon any other condition: Bredin v. Agnew, 3 W. & S. 300.

The second half of the stock of the Nice Company was acquired by Kirkbride from McAdoo upon Kirkbride's purchasing the outstanding claims in performance of agreement. His promise, upon thus acquiring the remaining stock, to reserve $25,000 annually out of net profits for the old stockholders imposed a legal liability upon him, and constituted an additional consideration for the purchase of the second half of the stock. Such promise is not uncertain nor impossible of performance; and has already been in part executed. Kirkbride is not in default and plaintiffs have accepted benefits thereunder: Ward v. Vance, 93 Pa. 499.

Usury is not pleaded, nor does it exist in the present case.

OPINION BY MR. JUSTICE SIMPSON, March 14, 1921:

Plaintiff, one of the appellants here, filed a bill in equity against nine individuals, alleging therein that she had been the legal and still was the equitable owner of certain shares of the preferred and common stock of the Nice Ball Bearing Company (hereinafter called the Nice Company); that by sundry agreements, which she recites, five of the defendants became voting trustees of all the stock of the company, and held the legal title thereto; that Kirkbride, another defendant and appellee here, also claims to be the equitable owner of all the stock; that a special meeting, to elect officers of the corporation, was about to be held, at which Kirkbride, unless restrained, would require the voting trustees to vote all the stock in favor of the candidates he had selected, and would prevent plaintiff from voting the shares of which she was the equitable owner; and prayed an injunction thereagainst and other consonant relief. Subsequently, the other appellant, claiming to be the equitable owner of a like number of shares of each

class of stock, and to be in the same situation as plaintiff, applied for and was given leave to join in the suit. Four of the defendants specifically answered all the averments of the bill, denying plaintiffs alleged ownership; one demurred; one appeared but did not answer; and the other three neither appeared nor answered. Without discontinuing the suit as to those not answering, without having the demurrer disposed of, without joining the corporation and the other shareholders, in like situation with themselves, as parties to the suit, and without amending the bill in any respect, plaintiffs filed a replication and set the case down for trial; and thereat, without defendant Kirkbride filing a crossbill, they and he proceeded to try the title to all the stock of the company, resulting in a decree that he owned it all and that the bill should be dismissed. Plaintiffs appeal therefrom, without objecting to the irregular procedure above referred to, alleging as error only the decision in favor of Kirkbride's claim of ownership. With hesitancy, we overlook these irregularities and consider only the objections now made by appellants.

The single question to be decided is, therefore: Was Kirkbride the owner of the shares of stock of the Nice Company, claimed by plaintiffs? The court below held that the answer to this, depended entirely on the interpretation of certain agreements made by the various parties to the suit, and a letter written by appellee; giving as its reasons that these papers apparently set forth all the rights and liabilities of the parties in relation to the stock, and there was neither averment nor proof of anything added or omitted by fraud, accident or mistake. It being conceded that on this appeal we need look no further, our duty will be performed when we set forth the situation of the parties at the dates of the agreements and letter, and then interpret so much of them as bears upon the question at issue.

The Nice Company, being in serious financial difficulties, and indebted to the William Steele & Sons Com-

pany (hereinafter called the Steele Company), in the sum of approximately $250,000, conveyed its real estate and plant to the latter company, as collateral security for said debt, and took back a lease thereof, agreeing to pay $2,095.77 at once and $3,000 each month until the debt was paid. None of these payments were made because other creditors objected and threatened legal proceedings against the Nice Company, which probably would have resulted in setting aside the deed. As a consequence, negotiations were entered into, resulting, on February 15, 1918, in an agreement between the Nice Company, the Steele Company, Henry M. McAdoo, agent for all the stockholders of the Nice Company (the agreement being assented to in writing by plaintiffs and all the other stockholders), all the creditors who had claims exceeding $1,000, and by five of defendants, who were therein named as voting trustees. It provided, inter alia, that McAdoo should cause all the stock to be transferred to the voting trustees; that the Steel Company should extend further credit to the Nice Company; should relinquish its claim upon some $50,000 of the machinery it held as security for its debt; should supervise and manage the business of the latter company; should surrender the lease; and should subordinate its claim to those of the other creditors, who should be "paid in full at the end of one year from the date hereof, or......this agreement shall end"; the Steele Company to retain title to the real estate in the meantime, and it or its nominee to receive one-half of the voting trust certificates, representing one-half of both kinds of stock; and McAdoo, as agent for the old stockholders, or his nominee, to receive voting trust certificates for the other half thereof. In accordance with this agreement the stock of the Nice Company, which was then of little or no value, was transferred to the voting trustees.

By an agreement between the Steele Company and McAdoo, dated February 20, 1918, the former agreed that if

it was paid its claim against the Nice Company in full, before April 1, 1918, or if there was produced an executed agreement with satisfactory parties agreeing unqualifiedly to pay the debt within òne hundred and twenty days from that date, it would transfer to McAdoo its interest in the agreement of February 15, 1918, and its title to the one-half of the common and preferred stock of the Nice Company. McAdoo thereupon, as agent for the old stockholders, including appellants, sought to interest outside parties in the business, and finally obtained a letter from defendant Kirkbride, dated April 1, 1918, by which the latter agreed to purchase the Steele Company's interest on the terms stated therein, provided there was assigned to him, Kirkbride, the other one-half of the preferred and common stock, for which McAdoo held voting trust certificates, "so that the entire capital stock, carrying with it the entire business and all the assets of. every nature, will then vest in the purchaser [Kirkbride] free and clear of all encumbrances," except certain ones not necessary to recite. This letter will be further referred to later on, when considering appellants' contentions, which are largely founded upon it. For the present it is sufficient to say, it was accepted by McAdoo for the stockholders, including appellants, and four agreements based upon it were drawn and executed on the same day : One between the Steele Company and Kirkbride, by which the former transferred to the latter its interest in the agreement of February 15, 1918, including its interest in half of the stock of the Nice Company; a second between the same parties by which the former transferred to McAdoo its claim against the Nice Company; the third between McAdoo and Kirkbride, by which the former transferred to the latter all the rights he acquired under the first and second of the above agreements; and the fourth also between the last named parties, by which it was agreed if Kirkbride purchased the claims of the other creditors of the Nice Company, some of which were not parties to the agreement

of February 15, 1918, he should receive a transfer of the other one-half of both preferred and common stock, "thereby vesting in him [Kirkbride] by this agreement and by another agreement of even date herewith [the third above referred to] all of the capital stock of the said [Nice] company." The letter of Kirkbride, above mentioned, is not referred to in any of these agreements.

Kirkbride subsequently paid the Steele Company in full, and received an assignment of its interest in the stock of the Nice Company, and the voting trustees thereupon gave him, as nominee of the Steele Company, one-half of each class of voting trust certificates. This ended the Steele Company's interest in the stock and its connection with the Nice's Company's affairs. He also purchased the claims of all the other creditors of the Nice Company (except certain ones paid by the company itself, without his knowledge or consent, prior to the agreement next recited), and received from the voting trustees, at McAdoo's direction and as his nominee, the remaining half of the voting trust certificates; thereby becoming the holder and, if the agreements are controlling, the owner of all of them, and entitled to receive all the stock of the company, of both classes, when the voting trust should end.

By an agreement dated February 15, 1919, between the Nice Company, Kirkbride, McAdoo and the voting trustees (assented to in writing by all the old stockholders of that company, including plaintiffs), it is recited that "Kirkbride is the holder and owner of all the issued and outstanding common and preferred stock of the Nice ......Company," by virtue of the agreements and facts hereinbefore set forth; and the agreement of February 15, 1918, is thereby extended for a further period of six months "pending the submission of a plan satisfactory to the said Franklin B. Kirkbride relating to the operation of the Nice......Company hereafter," "all the other terms, conditions, stipulations and provisions contained in said creditors' agreement of February 15, 1918......

[to] remain in full force and effect, in the same manner as though said agreement had provided for an extension thereof until August 15, 1918." No plan was thereafter submitted, nor was anything further done by the Nice Company, or its old stockholders, after the last mentioned date, looking to their redemption of the stock, or complying with the agreement of February 15, 1918.

It is clear, from the above agreements (all of which were drawn and approved by counsel for the respective parties, and, hence, for this additional reason, must be presumed to fully set forth their intention), that Kirkbride became the equitable owner of all the preferred and common stock of the Nice Company, unless, aside from the agreements themselves, he had lost or not acquired the rights seemingly given to him thereby. Appellants allege four reasons why this is so. In the first place they say the contract is usurious. This claim is founded on the fact that as, by the earlier agreements, the Steele Company was to receive the whole of their claim with interest, and in addition one-half of the stock of the Nice Company, the gift of the stock must be treated as an additional payment and hence usurious; and since Kirkbride is but an assignee of the Steele Company the contract must be so treated as to him also. Laying aside all other objections to this contention, it is clear, since the Steele Company was to supervise and manage the Nice Company pending the adjustment, gave up $50,000 of its security and subordinated its claim to that of the other creditors, there is an ample outside consideration for the transfer of the stock, and usury cannot be predicated of such an agreement; for "it is not in the power of the court or jury, under the evidence, to separate that sum into parcels, and say how much [the Nice Company] was paying in consideration of the......other benefits which [it] was getting under the article, and how much it was paying in consideration of the satisfying" of the existing indebtedness: Guillinger v. Zahniser, 3 Sadler 555, 558. To the same effect is Heist v. Blais-

dell, 198 Pa. 377. In addition, Kirkbride is a purchaser for value, at the Nice Company's request, and, not having been a party to the usurious agreement, even if there was one, cannot now be deprived of his rights by reason thereof.

The other three contentions are all founded upon appellee's letter of April 1, 1918, above recited. Admittedly, the provisions of this letter were not merged in the four agreements of even date therewith, and based thereon; and hence we are required to determine whether or not it has the effect of defeating the clear title to the stock, vested in appellee by the agreements themselves. It does not directly do so, for, as already quoted, it distinctly declares that the stock should all belong to him. It states also, however, "The purchaser [Kirkbride] to agree to reserve annually from the net profits $25,000 to be paid to McAdoo et al. [old stockholders] before payment of any dividends......and my further understanding [is] that the present organization will continue in the employ of the new owner,......[and I am] willing to consider the adoption of a bonus plan giving the executive officers an opportunity to share in the net profits of the company in excess of $175,000 per annum." It is alleged that these provisions are so indefinite and uncertain as to be incapable of enforcement, and that the last thereof shows a term of the contract had never been agreed upon; and hence the whole matter is at large, the title to the stock did not vest in appellee, and he is remitted to a recovery from the Nice Company of the amounts due him, with interest. Since these questions were not suggested by any of the averments of the bill, they would, under ordinary circumstances, be dismissed because the pleadings as well as the proofs do not raise these issues: Thompson's App., 126 Pa. 371; Luther v. Luther, 216 Pa. 1; Caveny v. Curtis, 257 Pa. 575. They were, however, raised by appellants' requests for findings of fact and law, were not objected to by appellee on the ground stated, as he might have done under

revised Equity Rule 62; the promise to pay the $25,000 annually, if earned, was the consideration for the transfer of the stock; and hence, in view thereof and of the irregularities pointed out at the beginning of this opinion and acquiesced in by both parties, we do not feel at liberty to dismiss the objections because not pleaded.

Manifestly, however, the last two are matters with which appellants have no legal concern, since they were not part of the "present organization" or "executive officers" of the company; and, moreover, the first thereof was a provision inserted for appellee's benefit, and the last did not bind him to accept any "bonus plan" which might be suggested, as indeed none ever was.

Does the fact that the contract does not state during what period the annual reservation of $25,000 is to be paid to the old stockholders, wholly defeat appellee's title? Evidently McAdoo, as agent for appellants, did not think so, for he entered into the agreements of April 1, 1918, and February 15, 1919, both of which recited that appellee was the owner of all the stock; and he also directed the voting trust certificates to be issued to appellee. Evidently appellants did not think so, for they approved, in writing, the agreement of February 15, 1919, with the recital of appellee's ownership in it. Nor did they have any difficulty in accepting payments in accordance therewith, until all dividends ceased by reason of the filing of this bill. It is clear, therefore, that this claim is an afterthought, born of the improved condition of the company after its debts were paid by appellee, and we should be slow to destroy executed agreements of the parties, for reasons such as these, even though we would not specifically enforce them were they still executory: Geddes's App., 80 Pa. 442; Lynch's App., 97 Pa. 349; 1 Am. & Eng. Ency. of Law 516.

Nor is there any real difficulty growing out of the clause under consideration. Appellants' error arises from assuming that because no period of duration is stated, the contract must be held void for uncertainty;

whereas the courts will always deduce the term from the nature of the subject-matter, if it is at all possible so to do. "The law does not favor, but leans against the destruction of contracts because of uncertainty. Therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. Though there are some formal imperfections in a written contract, still it is sufficient if it contains matter which will enable the court to ascertain the terms and conditions on which the parties intended to bind themselves. The maxim, Id certum est quod certum reddi potest, applies": 6 Ruling Case Law 645. "Apart from contracts which, from their inherent nature, imply a power of revocation, it would seem that the intention of the parties to an agreement, that it should be perpetual and without limit as to duration, could not be more properly expressed than by silence as to any time limit or power of revocation. Although there appears to be some authority to the contrary, the rule seems to be that where no limitation is expressed in the agreement, neither party can terminate it without the consent of the other, unless the making of the contract itself indicates with sufficient clearness that the parties must have intended some other determination": Ibid. 895.

In the present instance the subject-matter is payments to be made out of profits, when earned, and which would otherwise be allotted to the stock, sold by appellants and the other stockholders to appellee. The charter of the corporation is in perpetuity; the stock will naturally exist as long as the corporation does; and the $25,000 will be paid out of profits, if sufficient, as long as the stock exists; in other words, the term of appellants' right is the term of the duration of the stock, which is absolute and indefinite as to time. True the corporation may be dissolved, because no longer able to fulfil its charter powers; but so it would be, under like circumstances, had appellants never parted with their

stock. A chancellor, upon due application, would not find it difficult to protect appellants as to these payments, though appellee should afterwards sell the stock; or to protect them should the corporation be dissolved; or indeed, should the owners of the stock endeavor to so conduct the business as to prevent them from getting the $25,000; but it cannot be done in the instant case, which is prosecuted on the theory of a disaffirmance of the contract itself.

The decree of the court below is affirmed, and the appeal is dismissed at the cost of appellants.