## Tobias Estate

Before Sinkler, P. J., Klein, Bolger, Ladner and Hunter, JJ.

*Joseph Ominsky* and *Martin Feldman*, for exceptants.
*S. C. Grossman* and *John Auspitz*, contra.

BOLGER, J., January 21, 1949.—Petitioners aver a contract between them and Mr. Tobias, decedent, for the purchase and sale of real estate, and seek specific performance thereof under section 18(a) of the Fiduciaries Act. Respondent, trustee under decedent's will, does not deny the execution of the contract, but alleges that Mr. Tobias was mentally incompetent at the time of the execution of the agreement and, therefore, denies liability. The master to whom the issue was referred has found in favor of petitioners. . . .

Since the authenticity of Mr. Tobias' signature was admitted, the master correctly placed the burden of proof upon the trustee to establish Mr. Tobias' lack of mental capacity: Patterson v. Snider et ux., 305 Pa. 272. The evidence of mental incapacity must be clear and unquestionable: Elcessor et al. v. Elcessor, 146 Pa. 359. . . .

There is much testimony of a circumstantial character, both for and against the mental capacity of Mr. Tobias, but none of the testimony against mental capacity excludes the possibility or the probability, in the light of the countervailing direct testimony, that Mr. Tobias had lucid periods, in one of which he signed and executed the agreement. The sum total of respondent's testimony falls far short of being positive, clear and unquestionable. It does not point to Mr. Tobias' being of unsound mind with any degree of certainty: Patterson v. Snider et ux., 305 Pa. 272, 277.

The master has cited a plethora of cases to support his legal conclusion that the contract is a legally binding one. Exceptant does not question this conclusion, except as to the findings of fact respecting the mental condition of Mr. Tobias. It is unnecessary, therefore, to cite any of these cases at this time.

Exceptant points out that stronger evidence is required for the court to decree specific performance of a contract than the amount required to reform or annul such an instrument: Graham v. Pancoast, 30

Pa. 89; Lynch's Appeal, 97 Pa. 349. He cites Friend v. Lamb, 152 Pa. 529, which holds that specific performance will not be decreed upon the basis of purely legal aspects of a contract which would disregard the possibilities of improvidence, hardship, oppressiveness or disaster, but rests in the sound discretion of the chancellor, who is to be guided by equity and good conscience, be the contract ever so specific in its terms. In the cited case, the court refused specific performance because of its highly oppressive terms and left the petitioner to his remedy at law for damages for breach of contract. To the same effect is Rupniewski et ux. v. Miazga, 299 Pa. 190; Caton v. Wellerhouse et ux., 77 Pa. Superior Ct. 331; Duc v. Struckus, 345 Pa. 65, and Hoffman's Appeal, 319 Pa. 1. It is also correct that less mental capacity is required to make a valid will than to perform an ordinary business transaction. Wherefore, the cases dealing with testamentary capacity in will cases have no direct application.

Since the burden of proof is upon the trustee to establish any inequity which would move the conscience of a chancellor to stay specific performance of this contract, let us examine the record respecting such inequity. There is no evidence here of an unconscionable contract of great disparity in price which would support any allegation of overreaching. On the contrary the record reveals the testimony of several competent real estate experts that the market value of the property was less than the contract price. This testimony the master has accepted. We have read all of the testimony and are in accord with the master's finding.

Exceptant maintains that great hardship will flow to testator's daughter from the enforcement of this contract because it will ruin a prospective business, which was bequeathed to her in decedent's will. There is no testimony of record to indicate whether the business of the dress shop was conducted at a profit or at a loss. We cannot assume, therefore, that any great

hardship would be involved in the discontinuance of it. Furthermore, the testimony indicates that testator fully knew what he was doing and that he did not regard the surrender of the business as a hardship. He had sold his beer distributing business several months before the transaction in question. His wife, who had during her life operated the dress shop, had died. Testator, being of an advanced age, according to declarations credited to him by reliable witnesses, stated he wanted to retire; that the character of the neighborhood was almost completely colored and that he did not want his daughter to live any longer in that neighborhood requiring that she bring up her children there. In corroboration of this intention, it is of great significance that testator at the instigation of the daughter made a deposit of $1,000 during the very month in which he died and two months after this transaction for the purchase of a property in another part of the city. The master did not accept, nor do we, the attempted explanation of Mrs. Tobias that Mr. Tobias did not know the purpose of drawing this check, that it was a scheme between her and the doctor and that she intended to maintain two establishments, Mr. Tobias living at the new home attended by a nurse, and that she would journey back and forth to the business daily. We are of the opinion, and the record amply supports this finding, that the defense interposed by the trustee was an afterthought, following the death of testator, and that he knew all about the transaction before he passed on.

We have, therefore, no factual basis for any finding of mental incapacity or of overreaching, oppression, unfairness in price or possible disaster. On the other hand, there is clear and direct proof of Mr. Tobias' intelligent comprehension of all of the details of this transaction and of his act in entering into it. The case clearly comes within the authority of Rubins v.

Hamnett et al., 294 Pa. 295, cited in the master's report, wherein specific performance was upheld when the party was mentally competent at the time the contract was made, the price was adequate and no fraud was committed.

The exceptant contends the master erred "in recommending specific performance, notwithstanding the fact that he finds and that there is an inference that petitioners took advantage of decedent's enfeebled condition without the knowledge of his daughter who handled his affairs". The master found no such inference. At one point in his report in discussing respondent's evidence, he states: "There is at most an inference that petitioners took advantage of decedent's enfeebled condition and persuaded him to sell the property without the knowledge of his daughter, who apparently handled his affairs." Exceptant very conspicuously neglects to continue the master's quotation, which is as follows: "However, decedent, one month earlier, had sold his beer distributing business and the property which went with it, apparently without the aid of his daughter." He then proceeds to analyze respondent's testimony, pointing out its fundamental weaknesses and the strength of petitioner's testimony. Exceptant's argument in this respect is unfair since it fails to give the entire quotation upon which it seeks to support its exception.

There is not a scintilla of evidence to support the averment of undue influence. As it later points out, there was no confidential relation existing between petitioners and Mr. Tobias and the evidence of the latter's mental weakness is utterly lacking in the supported findings of fact made by the master.

Exceptant alleges that the agreement was "surreptitiously obtained". The master found no such fact; in this he is supported by the record testimony.

Accordingly, the exceptions are dismissed and a decree of specific performance is entered.