**BOULEVARD AIRPORT, Inc. v. CONSOLI-DATED VULTEE AIRCRAFT COR-PORATION.**

Civ. A. No. 8875.

United States District Court
E. D. Pennsylvania.

Aug. 11, 1949.

Thomas D. McBride, David Berger, Louis Lipschitz, Philadelphia, Pa., for plaintiff.

F. Raymond Wadlinger, Philadelphia, Pa., for defendant.

BARD, District Judge.

This case comes before me on the defendant's motion to dismiss this action on the grounds that (1) the Court does not have jurisdiction of the defendant; (2) the summons was not lawfully and sufficiently served on the defendant; (3) that the complaint does not set forth a valid cause of action; (4) that the complaint does not set forth the written agreement upon which the cause of action arises, and sets forth an invalid and unenforceable agreement; and (5) the complaint is vague, indefinite, prolix and self contradictory, because it is based on an agreement and also an alleged deceit, fraud and conspiracy.

The plaintiff's complaint and the affidavits filed by both sides allege the following facts. On or about November 7, 1945, the plaintiff, Boulevard Airport, Inc., a Pennsylvania corporation, entered into a written agreement with the defendant, Consolidated Vultee Aircraft Corporation, a Delaware corporation having its offices in Wayne, Michigan, and authorized to do business within the Commonwealth of Pennsylvania[1]. This agreement was executed in Wayne, Michigan[2], and appointed plaintiff the sole distributor and gave it an exclusive franchise to sell the defendant's Stinson aircraft throughout southeastern and central Pennsylvania and the lower part of New Jersey. Under the terms of this agreement, the plaintiff was required to maintain places of business, salesrooms and service stations which were

---

[1] Such authorization is acquired by complying with the Act of May 5, 1933, P.L. 364, 15 P.S. § 2852—1001 et seq., as amended.

[2] The agreement provides that it becomes valid upon approval by a duly authorized executive official of defendant. The typewritten copy of the agreement provided by defendant shows that it was signed by plaintiff's president in Wayne, Michigan, and was approved by defendant's sales manager on November 8, 1945. The photostatic copy provided by plaintiff shows that it was signed by plaintiff's president in Gettysburg, Pennsylvania, and was approved by defendant's general sales manager (a different individual) on March 21, 1947.

satisfactory to the defendant, and to provide such working capital as the defendant deemed necessary. The plaintiff agreed to solicit, obtain and appoint dealers to sell the defendant's Stinson aircraft and products in the above mentioned territory, subject to approval by the defendant. The plaintiff agreed and was required to carry stock of the defendant's Stinson aircraft and products, to arrange for financing, to give instructions and to make every effort to satisfy owners and purchasers of this aircraft and products, to contact them at least once a month, and to condition the aircraft sold. After it had been in operation for a year, the agreement was terminable without cause by distributor upon thirty days notice and by the seller upon ninety days notice; it was also terminable for cause in accordance with specified terms. The agreement was to be governed and construed by the laws of Michigan.

On or about July 8, 1947, at a meeting in Detroit, Michigan, the plaintiff, through its general manager, and the defendant, through its vice president in charge of sales, orally rescinded the "termination without cause" clause of the agreement. On August 20, 1947 a certificate of withdrawal from doing business within Pennsylvania, which had been applied for in 1946, was granted the defendant by the Department of State of Pennsylvania[3]. On January 13, 1948, the plaintiff was notified by the defendant that, effective ninety days from date, the plaintiff distributorship and franchise was terminated and cancelled.

During the period from July 8, 1947, to January 13, 1948 the defendant's authorized agents urged and insisted that the plaintiff enlarge and extend its activity in behalf of the defendant. The defendant's authorized agents made repeated representations and assurances of a permanent and profitable distributor relationship. Relying on these proddings and representations and on the agreement of rescission, the plaintiff expended much time and money in expanding it physical facilities, employing new sales and service personnel, signing up new dealers and outlets for the defendant's products, and expended $31,400 in promoting this distributing and franchise agreement. In return the plaintiff reasonably expected to earn commissions of upwards of $50,-000 during 1948 and much larger profits in the following years. As a result of the termination of this agreement and in accordance with its terms, the defendant appropriated all dealers which the plaintiff had obtained and trained.

The plaintiff alleges that it has performed all its duties under the agreement faithfully and satisfactorily; that the agreement was terminated and cancelled on January 13, 1948 without just cause, excuse, or any legal justification; that the defendant has refused upon demand to reimburse the plaintiff for his investment in the enterprise, and has deprived the plaintiff of the profits which it reasonably expected to earn; that this cancellation was a breach of the written agreement as amended by the oral rescission of the termination without cause clause; and that the cancellation of this termination clause and the representations of intention to effectuate a permanent and profitable relationship were not made in good faith, but were made with the secret, fraudulent intent to oust the plaintiff from its distributorship and franchise as soon as the defendant could profitably reap the benefit of the plaintiff's expenditures, efforts and labors.

Upon motion of counsel for the plaintiff, this Court issued an order on September 20, 1948, which authorized the Sheriff of Dauphin County, Pennsylvania, to serve the copy of the summons and two copies of the plaintiff's complaint upon the Secretary of the Commonwealth of Pennsylvania as agent for the defendant. Service was so made on September 21, 1948.

 The plaintiff's complaint sounds in contract for breach thereof and in tort for fraud and deceit. Such inconsistency, or self contradiction as the defendant contends, is not ground for dismissal of the complaint. Federal Rules of Civil Pro-

---

[3] This is accomplished by complying with the Act of May 5, 1933, P.L. 364, as amended by the Act of July 31, 1941, P.L. 636, and the Act of May 23, 1945, P.L. 937, 15 P.S. § 2852—1015.

cedure, Rule 8(e) (2), 28 U.S.C.A.; Israel v. Alexander, D.C., 50 F.Supp. 1007; Townsend v. Walker Kidde & Co., Inc., D. C., 7 F.R.D. 166.

██ The plaintiff's complaint does set forth a good cause of action. In the field of tort law one who fraudulently misrepresents to another that he intends to do or not do a certain thing in the future for the purpose of inducing the other to act in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation. Restatement of Torts, §§ 525, 526, 530, 531, 871 comment e; Fidelity-Philadelphia Trust Co. et al. v. Simpson, 293 Pa. 577, 583; 143 A. 202; Standard Interlock Elevator Co. v. Wilson, 218 Pa. 280, 285, 67 A. 463; Berry et al. v. Chrysler Corp., 6 Cir., 150 F.2d 1002, 1004.

██ It is my opinion that the complaint also sets forth a good cause of action for breach of contract. American Type Founders, Inc. v. Lanston Monotype Machine Co., D.C., 45 F.Supp. 531, affirmed 3 Cir., 137 F.2d 728; Bassick Mfg. Co. v. Riley et al., D.C., 9 F.2d 138; cf. Rossmassler et al. v. Spielberger et al., 270 Pa. 30, 41, 112 A. 876.

██ Nor is the plaintiff's complaint vague and indefinite in respect to the damages claimed, as is contended by the defendent. The question of lost profits is always speculative to a certain degree and is quite often hard to prove. It is not necessary, however, that the plaintiff allege evidentiary facts to support his allegations of loss. Paragraph 23 of the complaint is sufficient when it says: "In reliance on said assurances and in performance of said demands, the plaintiff expended and invested upwards of $31,400 in promoting the distributor and franchise contract entered into with the defendant. The plaintiff * * * reasonably expected to earn an overriding commission of upwards of $50,000 during the year ending 1948 and much larger profits in the years to follow." These allegations are sufficient to inform the defendant of the plaintiff's claims. The defendant's remedy to obtain more specific information, if necessary, is by a bill of particulars, not by a motion to dismiss.

██ Furthermore, the complaint does not have to set forth the written agreement. It is sufficient if the substance of the agreement or its legal effect is alleged. Graffius v. Weather-Seal, Inc., D.C., 7 F. R.D. 125; Maryland Casualty Co. v. Kelly, D.C., 3 F.R.D. 28.

The defendant bases his contention that this Court does not have jurisdiction over him on the ground that service upon the Secretary of the Commonwealth as agent for the defendant was insufficient because the defendant had already been issued its certificate of withdrawal from doing business within this state, and that by the issuance of this certificate this agency had been revoked.

The statute establishing the procedure by which a foreign corporation withdraws from doing business within the Commonwealth of Pennsylvania[4] provides that "Process against the corporation in an action upon *any liability* or obligation *incurred within this Commonwealth, before the issuance of such certificate,* may be served thereafter upon the Secretary of the Commonwealth." (Emphasis added.)

The defendant contends that no liability was incurred before its certificate of withdrawal was issued, and that even if liability was so incurred, it was not incurred within Pennsylvania. Plaintiff contends, that even if a valid certificate of withdrawal was issued, process was rightly served in accordance with the above quoted portion of the statute.

It is true that under the contract theory of the complaint no liability arose before the certificate of withdrawal was issued. The breach and the ensuing liability did not occur until January 13, 1948. The certificate of withdrawal was issued on August 20, 1947. Had this been the only theory of the complaint, service of process on September 21, 1948 would not be valid.

[4] Note 3 supra.

Under the tort theory of the complaint, however, I will sustain the service of process.

■■■ The tort of fraud and deceit for fraudulent misrepresentation is complete when the other person acts thereon to his detriment or incurs liability as a result of the misrepresentation. Restatement of Torts, § 889 comment c. Therefore, the defendant's liability arose when the plaintiff acted to his detriment upon the alleged fraudulent misrepresentations of the defendant.

The defendant's liability was created, therefore, when the plaintiff acted to his detriment in the promotion of the distributor and franchise agreement, which action was more extensive than he would have taken in the ordinary course of promoting the agreement. While the plaintiff's first act of reliance may have taken place in Michigan when he agreed to the cancellation of the termination without cause clause, I fail to see how this alone was to his detriment. But even if liability was so incurred in Michigan, additional liability was created when the plaintiff took further action to the extent that I have indicated.

The plaintiff is a domestic corporation located in Philadelphia, Pennsylvania. His distributorship and franchise is for a limited area only. Therefore, the plaintiff could only act where he is situated and within his territory. Since most of the plaintiff's territory was in Pennsylvania, it is logical to conclude that the plaintiff acted within Pennsylvania.

■■■ "The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement of Conflict of Laws § 377. "The law of the place of wrong determines whether a person has sustained a legal injury". Restatement of Conflict of Laws § 378. It follows that the defendant's liability arose within the Commonwealth of Pennsylvania and is governed by the laws of Pennsylvania. This is a question of tort, not contract, liability, and the clause of the agreement that Michigan law shall govern has no effect.

I can find nothing in the Pennsylvania cases which have been called to my attention that refutes any of the foregoing statements of law as formulated by the American Law Institute. Cf. Delaware, Lackawanna & Western RR. v. Ashelman et ux., 300 Pa. 291, 297, 150 A. 475, 69 A.L.R. 588; Fidelity-Philadelphia Trust Co. et al. v. Simpson, supra; Standard Interlock Elevator Co. v. Wilson, supra; Knight v. West Jersey R. Co., 108 Pa. 250, 253, 56 Am.Rep. 200; Baltimore & O. R. Co. v. Halchak, D.C., 71 F.Supp. 224, 226.

The crucial question now becomes when did the plaintiff act. In paragraph 17 the plaintiff's complaint states that, "Relying on the defendant's agreement of rescission and the representations and inducements made by the defendant corporation * * *, and for the purpose of carrying out the terms of the distributorship agreement as modified on or about the 8th day of July, 1947, * * * the plaintiff embarked upon an extensive advertising and promotional campaign * * *." In paragraph 19 the complaint states that " * * * the plaintiff from on or about July 8, 1947 until January 13, 1948, contacted and signed up exclusive dealers of the defendant's products * * *." In paragraph 24 the complaint states, "The plaintiff continued its activity and performed all of its undertakings in a manner and to an extent and quality satisfactory to the defendant until January 13, 1948 * * *." Other paragraphs of the complaint allege that between July 8, 1947 and January 13, 1948 defendant's agents repeatedly assured the plaintiff of the permanency of the distributor relationship.

I think it is safe to assume that in the six weeks intervening between July 7, 1947, when the alleged misrepresentations first occurred, and August 20th, when the defendant's certificate of withdrawal was issued, the plaintiff acted within Pennsylvania in reliance upon the defendant's misrepresentations. At least, the plaintiff should have the opportunity to prove that he so acted.

In accordance with the views I have expressed in this opinion, the defendant's motion to dismiss the action is denied.