Du Bois Borough v. Du Bois City Water Works Co.,
Appellant, and United States Trust Company, Trustee
for Mortgage Bondholders.

*Equity—Rescission of contract—Fraud.*

The grounds on which equity interferes for rescission of contract are distinctly marked, and every case proper for this branch of its jurisdiction is reducible to a particular head. They are principally fraud, mistake, turpitude of consideration, and circumstances entitling to relief on the principle of quia timet.

*Equity—Mutual mistake—Rescission of contract—Water companies.*

A contract between a borough and a water company provided that water for the borough supply should be drawn only from certain designated land. It subsequently turned out that there was not sufficient water on the land designated to supply the borough. *Held*, that the failure of the water company to furnish the borough a sufficient supply of water, arising as it did from a mutual mistake of the parties, was not sufficient to justify a court of equity in canceling the contract.

*Water companies—Act of April 29, 1874—Parties.*

The act of April 29, 1874, P. L. 94, by which the courts of common pleas are authorized on bill filed by any citizen using the water, alleging impurity or deficiency, to compel a water company to correct the evils complained of, applies to water companies which have made contracts to supply municipalities with water, and under the act a municipality has the same right as a citizen to file a bill in equity to compel a water company to correct abuses.

Argued April 23, 1896. Appeal, No. 123, Jan. T., 1896, by defendant, Du Bois City Water Works, from decree of C. P. Clearfield Co., Sept. T., 1893, No. 5, on bill in equity. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity for the rescission of a contract.

GORDON, P. J., found the facts and the law to be as follows:

1. That on August 10, 1889, in pursuance of an ordinance that day passed authorizing it, an agreement in writing was entered into between the borough of Du Bois and the United States Water Company, Limited, by which said water company covenanted and agreed to furnish to said borough and its inhabitants "an adequate supply of pure, wholesome water."

The agreement contained, "inter alia" the following stipulations, viz:

"First. The source of supply shall be from springs on the lands now owned by John E. Du Bois, located about six miles northeast of said borough, from which spring water shall be piped direct to the reservoir and in no case will water be taken from open springs or containing surface water.

"Second. The said works shall be completed and water delivered to said borough of Du Bois within six months from the acceptance and signing of this agreement by the said borough. A standing pressure of at least 80 pounds per square inch is guaranteed on a level of the intersection of Long and High streets, and a corresponding pressure at other points where fire hydrants may be located, varying only by the difference in altitude, and the system of piping shall be of a capacity sufficient to throw at least six streams of water each through 50 feet of two and one-half inch hose with one inch ring nozzle, under the pressure above designated."

The agreement further provided that the water company should lay three miles of pipe within the borough and erect hydrants thereon on every four hundred feet thereof for the use of the borough in extinguishing fires and flushing public sewers. That for the use of the water thus furnished, the borough should pay to the water company the sum of $35.00 per annum for each hydrant erected, during the period of twenty years from the completion of the works. It further provided that the prices or rates for domestic and other purposes should not exceed those set out in a schedule therein contained.

2. That on the same day, to wit: August 10, 1889, the town council of said borough passed an ordinance, in which, after reciting that they had on May 21, 1889, by resolution, accepted the proposition submitted for furnishing water, they granted to the said United States Water Company, Limited, its successors and assigns, the right " to lay, maintain, operate and keep in repair, a system of pipes and pipe lines for supplying pure and wholesome water to said borough and its inhabitants, for public and private use." Copies of said contract and ordinance are contained in plaintiff's bill.

3. That on or about May 20, 1890, the United States Water Company, Limited, assigned said contract and all their fran-

chises and rights therein to the Du Bois City Water Works Company, under and by virtue of which said latter company assumed and agreed to perform all the duties and obligations which, in said contract, were to be kept and performed by United States Water Company, Limited, and thereupon undertook and entered upon the performance of the same.

4. That said Du Bois City Water Works Company made proper efforts to perform said contract on their part, and performed the same in good faith so far as they were able to do, but failed to perform in that it did not supply to the borough of Du Bois and its inhabitants, water of the quality, quantity and pressure called for therein. They practically admit, in their answers and testimony, their failure of performance, and among other things allege, by way of defense, that the water stipulated could not be procured in quality and quantity, and that strict performance was impossible.

5. That from the making of the contract up to the bringing of this suit, during the dry seasons of each year, the defendant water company has not furnished an adequate supply of water to the borough of Du Bois and its inhabitants. The standing pressure of the water during said periods, at the intersection of Long and High streets, has not been eighty pounds pressure per square inch, and at higher elevations the pressure was proportionably lower. At some points water was only to be had in the mornings, and at others none at any time.

6. In pursuance of said contract the water company put down water pipes, with the hydrants stipulated for, in the borough, and from thence ran pipes to springs on the designated lands of John E. Du Bois. Pure water was thus procured in sufficient quantity at the outset during the wet season, but which utterly failed during dry seasons. These pipes were subsequently extended to other springs and streams, but without success. Water in sufficient quantities, with all the efforts put forth was not obtained from said designated lands. Subsequently, for a time, the supply of water from the springs was supplemented by water pumped into the reservoir from the artesian well of John E. Du Bois in the borough of Du Bois, but it was impure and unwholesome water, and was not of the character stipulated for. Still later, to wit: after this suit was commenced the water company expended a large sum of money to wit: $

in endeavoring to procure water. They sank three shafts, from the bottom of which they drilled wells. These were connected, and water from them pumped into the reservoir, and from thence it flowed to the borough. These shafts were not on the lands designated in the contract, but were on the low lands of the valley of Sandy creek. Water thus obtained in sufficient quantity, but not of the quality stipulated for in the contract. It is impure, deleterious to health, and unfit for domestic use.

7. The defendant water company has failed to keep and perform the following requirements of the contracts, to wit: That there should be an adequate supply of water; that it should be pure and wholesome; that it should be obtained from certain designated springs; and that it should be maintained at a standing pressure of at least eighty pounds per square inch at the intersection of Long and High streets. These are material and essential elements of the contract, and constitute substantially the whole consideration the borough was to receive for the covenants entered into and privileges granted by it.

8. The contract as originally made was not subsequently changed or supplied by the parties, nor were any of its provisions waived by the borough or any of its officials or representatives by its authority. It is true certain negotiations were had between the defendant water company and a committee appointed by resolution of the town council of the borough after the bringing of the suit, with a view of adjusting or avoiding the difficulties between them, which may have and probably did encourage the former to expend money in securing water elsewhere than from the springs designated in the contract, yet nothing was said or done to encourage the company to conclude that a supply of water from other sources would be received as performance under the contracts unless it was of the quality as well as of the quantity stipulated for, which it was not.

9. The pleadings and evidence show that the defendant water company have not performed their contract, in its material and essential elements, and that they are either unable or unwilling to do so.

10. That the existence of the contract and the claim of the defendant water company to have the right to keep and maintain the privileges granted to it by the borough under it, to wit: to hold its rights of way through the streets; maintain its pipes

therein, and the right to supply the borough and its inhabitants with water; works an irreparable injury, which cannot be compensated in damages, by supplying impure and unwholesome water, and making it difficult, if not impossible, for the borough to secure a proper supply from other sources, by contract or otherwise.

11. That on August 12, 1892, the town council of the borough of Du Bois passed a resolution electing to rescind said contract, of which notice was served upon the defendant water company on          1892.

We find the law applicable to the case as follows, viz:

1. The rights of the parties are to be measured by the terms of the contract entered into between them, and the court has no right to change its terms by substituting for that which was contracted for something essentially and materially different therefrom.

2. That from a fair and reasonable construction of the contract, the conclusion follows that the stipulations therein, that the water to be furnished should, in quality, be pure, wholesome spring water, and in quantity such as would be of a certain pressure at a given point in the borough, are of such importance as that they may be deemed to have been considered by the parties as vital to its existence.

3. There being no evidence of actual or constructive fraud, and the contract not being, on its face, obviously impossible of performance, the fact that it may have been impossible of performance on the part of the water company would not justify it in performing in some other way than that stipulated for, by supplying water inferior in quality and quantity, nor relieve it from liability of having it canceled and annulled.

4. The resolution of the town council limited the power of the water company to endeavors to compromise with the water company, and such efforts would not be evidence against it. Anything said or done by the committee in excess of that power and any negotiations between it and the water company not reported to the town council or approved by it, cannot prejudice the rights of the borough, the plaintiff in this action.

5. The pleadings as well as the evidence establish that the defendant water company is either unable or unwilling to comply with the terms of the contract, and has not done so.

6. That in justice and equity, under the pleadings and evidence, the contract should be canceled.

The court entered a decree canceling the contract.

*Error assigned* was above decree.

*A. L. Cole,* for appellant.—The power of a chancellor to decree the rescission of a contract and order its surrender, though undoubted, is one of the most delicate powers which he is ever called upon to exercise, and it is never to be put forth except in a clear case: Graham v. Pancoast, 30 Pa. 89 ; Henderson v. Hays, 2 Watts, 148 ; Delamater's Est., 1 Whart. 373 ; Haines's App., 73 Pa. 169 ; Bird's App., 91 Pa. 68 ; Stewart's App., 78 Pa. 88.

A proceeding under the 34th section, act 1874, does furnish an adequate and ample remedy, whereby the court could have directed and compelled a performance of the contract, so that the borough might have water. Instead, they are seeking to get water by canceling the only contract they have with anybody to furnish it.

*George A. Jenks* and *W. C. Pentz,* for appellee.—So long as a contract continues executory, it may not only be impeached for fraud or mistake, but any invalidity which would be a defense at law would in general be ground for cancelation in equity: Nace v. Boyer, 30 Pa. 99.

A mistake on one side may be a ground for rescinding a contract, or refusing to enforce its specific execution, but it cannot be ground for altering its terms: Schettiger v. Hopple, 3 Grant, 55 ; Adams on Equity, 411 ; 15 Am. & Eng. Ency. of Law, 648 ; Wilson v. Getty, 57 Pa. 266.

A defective, negligent, and worthless performance is the same as no performance at all: Miller v. Phillips, 31 Pa. 218.

Whenever a deed or instrument exists which may be vexatiously or injuriously used against a party, after the evidence to impeach or invalidate it is lost, which may throw a cloud of suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings, a court of equity will afford relief by directing the instrument to be delivered up and canceled, or by making any other decree

which justice or right may require : Dull's App., 113 Pa. 510 ; Kay v. Scates, 37 Pa. 31 ; 1 Pomeroy's Equity, 2d ed. 283 ; 3 Pomeroy's Eq., pp. 2148, 2149.

In the cases of Lehigh Water Company's App., 102 Pa. 515, and Freeport Water Co. v. Prayer, 129 Pa. 605, it has been ruled that the exclusive right referred to in the act of 1874 does not apply as against municipal corporations.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1896 :

The power of a court of equity to compel the cancellation of a contract, though well established, is very exceptional in its character. Its purpose is never to interfere with the freedom of contract or with proper legal liability even for bad bargains, but only to supplement the powers of courts of law where there is exceptional equity of a settled and recognized kind. Hence it is never to be exercised except in very clear cases and for definite cause. The causes which will justify it were stated as long ago as Delamater's Estate, 1 Whart. 362, and experience, and the amplification of equity powers in sixty years have not furnished any instance of their enlargement. In that case GIBSON, C. J., said, " The grounds on which equity interferes for rescission are distinctly marked, and every case proper for this branch of its jurisdiction is reducible to a particular head. They are principally fraud, mistake, turpitude of consideration, and circumstances entitling to relief on the principle of quia timet." In Yard v. Patton, 13 Pa. 278, this language was quoted as authoritative and it was added that each of these causes should be established by positive and definite proof. In Graham v. Pancoast, 30 Pa. 89, it was said by STRONG, J., " Inadequacy of price, improvidence, surprise, and mere hardship have each been held sufficient to stay the active interposition of a chancellor. Yet no one of these, nor all combined, furnishes an adequate reason for a judicial rescission of a contract. For such action something more is demanded—such as fraud, mistake or illegality." In Rockafellow v. Baker, 41 Pa. 319, it was said, " our interposition is invoked, not to carry out and accomplish what the parties have begun, but to undo what the parties have accomplished. How narrow the grounds are upon which a court of equity will interpose for such a purpose and how cautious and reluctant its steps will be in that direc-

tion, were fully shown in Graham v. Pancoast, 30 Pa. 97, and Nace v. Boyer, 30 Pa. 109. Nothing but fraud or palpable mistake is ground for rescinding an executed contract." And in Stephens & Wife's Appeal, 87 Pa. 202, it was said, "No fraud or mistake, or turpitude of consideration and circumstances entitling her to relief on the principle of quia timet are proven. Nothing less than one of these, clearly established, would justify the court in ordering the rescission of an executed contract." No case has gone beyond these, and while we do not say that a willful and obstructive refusal to perform a contract, under circumstances which practically prevent the party aggrieved from entering into another, may not afford ground for equitable cancellation, yet some such special grounds must appear in order to take the case out of the general rule that remedy for mere breach must be sought at law.

Tested by these settled principles there is no case here at all for the court's interference. Neither the bill nor the findings of fact under it charge any fault to the defendants. They show a want of strict performance, but they also show that strict performance was impossible, not from any lack of effort on the part of the defendants, but because the contract limits the source of supply to springs on the Du Bois land, and those springs are inadequate to furnish the needed quantity of water. The utmost that is made out by the bill and the evidence is that the contract calls for the performance of an impossibility by reason of a mistake of fact as to the capacity of the stipulated source of supply. But this mistake was no more the fault of defendants than of plaintiff, and the parties cannot be put back in statu quo. If the defendants have, to their misfortune, made a contract whose full performance is impossible, they may be unable to recover the stipulated rental, either in whole or in part. But this is a matter of defense in an action at law, and affords no ground for the cancellation of the contract. Certainly there is no equity in putting the entire loss arising from a mutual mistake upon one party, with no consideration for the injury to its plant and franchise, and no allowance for the money already expended thereon without fault. The case is preëminently one for mutual concession and amicable adjustment on a fair basis, either by reduction of the rental, or by enlargement of the permitted source of supply. But failing this action by the parties

themselves, equity will not help one of them to put the whole loss on the other, but will leave them to such remedies as they may have in a court of law.

Reference was made in the court below and here to the act of April 29, 1874, sec. 34, cl. 3, P. L. 94 (Purdon, 12 ed. 955, pl. 4), relating to gas and water companies, by which the courts of common pleas are authorized on bill filed by any citizen using the water, alleging impurity or deficiency, to compel the water company to correct the evil complained of, and to make "such order in the premises as may seem just and equitable." The learned judge below was of opinion that this remedy did not apply to cases of contract, but only to water rights acquired by eminent domain under the act of 1874, and it has been argued here by appellees, citing Lehigh Water Company's Appeal, 102 Pa. 515, and Freeport Water Works Co. v. Prager, 129 Pa. 605, that this section applies only to private citizens and does not include municipal corporations. Both these views however are erroneous. What was decided in those cases was that the exclusive privilege of furnishing water, given by the act to the first company erecting works, does not prevail against a city or borough building waterworks in its municipal capacity and under its general powers. In the present case the borough is not the builder or owner of waterworks but a mere consumer under contract, and stands upon the same basis as any private citizen in regard thereto. The remedy given by the act is intended to be adequate, and we see no reason why it may not be made so. The whole subject is put under the control of the court in the broadest terms, and being one which concerns the public interests may be treated with regard thereto, to the extent necessary, even to the reformation of the contract upon a basis just and equitable to both parties, where, as here, it was made in mutual mistake as to an essential fact, and a remedy for the difficulty may be found without violation of the main intent of both parties in the original instrument.

Decree reversed and bill dismissed with costs.