103 So.2d 693 (1958)
Kenneth J. GANAWAY, Appellant,
v.
Dorothy HENDERSON, Appellee.
No. A-15.
District Court of Appeal of Florida. First District.
June 24, 1958.
Rehearing Denied June 24, 1958.
*694 Phillip D. Anderson, Palm Beach, and Roy T. Rhodes, Tallahassee, for appellant.
Hopkins & Folsom, Tallahassee, for appellee.
WIGGINTON, Judge.
On January 1, 1954, appellant, who was defendant before the Chancellor, entered into a written agreement with appellee whereby defendant leased to plaintiff a certain "Dairy Queen" store building, together with the equipment and machinery located therein, for a period of two years. In accordance with the provisions of the lease plaintiff-lessee deposited $3,000 with the defendant-lessor to secure payment of the rents and performance of the covenants and conditions thereunder. Plaintiff as lessee obligated herself to pay the stipulated amount of $200 per month plus a sum equal to sixty cents for each gallon of mix processed through the freezer, which was a part of the leased machinery. Shortly after taking possession of the premises plaintiff wrote a series of letters to defendant in which, among other things, she complained of trouble with the machinery, and requested that someone take over the lease. In accordance with plaintiff's request, defendant advertised in a newspaper to find a new operator, and when he located one, he notified the plaintiff by telegram of the date on which the new operator would arrive to take over the store, thereby allowing plaintiff to make other plans for her livelihood. The plaintiff vacated the premises on June 30, 1954, but being unable to agree with defendant upon a settlement of their differences arising out of the lease contract, she filed the suit in chancery out of which this appeal arises.
As grounds for the relief prayed, plaintiff alleged that she was fraudulently induced to enter into the lease agreement in that defendant represented the equipment as being in good working order whereas it was not. For further grounds, plaintiff alleged failure of consideration, breach of warranty, and mutual cancellation. As an offsetting credit against the unliquidated rental that accrued during the six months plaintiff *695 was in possession of the leased property, she prayed for an accounting claiming reimbursement for certain quantities of ice cream mix allegedly spoiled due to faulty equipment. Defendant moved to dismiss the complaint for failure to state a cause of action, and upon denial thereof answered, denying plaintiff's allegations, and counterclaimed for damages for an alleged breach of contract. Upon consideration of the proofs the Chancellor found, inter alia, "there was no overreaching or fraud on the part of the defendant * * *"; that contrary to defendant's express warranty "* * * the machinery was never placed in first class condition", and that "defendant * * * acquiesced in the cancellation of the Lease by the plaintiff."
From final decree awarding judgment for plaintiff in the amount of $2,096, defendant took this appeal challenging (1) the sufficiency of the evidence, (2) the Chancellor's denial of his motion to dismiss and (3) the Chancellor's failure to transfer the cause, ex proprio motu, for jury trial at law. The latter ground of the appeal is on the theory that when plaintiff's proof failed to establish fraud, the court was without jurisdiction to grant the equitable relief sought. Appellant argues that since an adequate remedy at law exists for determination of the damage issue, the case should have been dismissed or transferred to the law side of the court for a jury trial on that issue.
Our examination of the record convinces us that no error was committed in denying appellant's motion to dismiss, and that there is ample evidence to support the Chancellor's findings of fact. The question remains as to whether plaintiff's proofs established at least one premise upon which the relief sought was grantable by a court of equity.
The redress of a party who has been led into a transaction by false representations and deceit is not confined to his legal action for damages. He may seek appropriate relief in equity.[1] Further, when one of the parties to a contract unjustifiably refuses to perform his agreement as a whole, or any substantial part of it, this gives the other party the option to rescind the entire contract, provided he offers to do so within a reasonable time, restores what he has received, and the situation of the parties remains so far unchanged that they can be restored to their original position.[2] It has also been held that the parties themselves can rescind a contract by mutual consent when such rescission violates no established rule of law.[3] Thus, the mere existence of a remedy at law for damages does not exclude the wider jurisdiction of equity to unravel the transaction, undo the contract, and restore the parties to their former position.
The power of a court of equity to enforce the cancellation of a contract, although exceptional, is well recognized. Its purpose is to supplement the powers of a court of law when there exists some unusual equity of a settled and well recognized nature; and its grounds are distinctly marked. These grounds are primarily fraud, mistake, turpitude of consideration and circumstances entitling relief on the principle of quia timet. As in the case of specific performance, relief by way of cancellation lies within the sound discretion of the court, to be exercised according to what is reasonable and proper under the circumstances of each particular case.[4]
By her complaint plaintiff prayed for certain equitable relief grounded upon fraud, turpitude of consideration and cancellation by mutual consent. Through her allegations she established prima facie *696 entitlement to the relief sought. The importance of securing a decree cancelling the lease and thereby relieving plaintiff of further obligation thereunder is clearly demonstrated by defendant's counterclaim seeking damages in excess of $10,000 for plaintiff's alleged breach of contract. Appellee indeed had very real cause to fear not only probable future injury, but a certain and present one.
In Williams v. Wetmore,[5] our Supreme Court adopted the doctrine of concurrent jurisdiction. Quoting from Tubb v. Fort, Mr. Justice Hocker stated: "`The general rule of practice in courts of equity, has long been settled that if the subject-matter of the suit is not without the jurisdiction of a court of equity, and there may be circumstances under which it would be competent for the court to grant relief, the objection that there is an effectual and complete remedy at law must be taken by demurrer, and comes too late at the hearing * * *'" In DeCottes v. Clarkson,[6] it was held that: "Where no objection is made in any manner to the jurisdiction of a court of chancery in a partition suit, and the case is regularly brought to final hearing and decree on bill, answer, and testimony, the appellate court will not consider objections as to jurisdiction raised for the first time on appeal, where the record fails to disclose an entire absence of jurisdiction over the subject-matter."
It is clear that, although the fraud complained of failed to materialize under the proof, the subject matter in the case now before this court was not outside the jurisdiction of a chancery court. The relief prayed for by way of a decree of cancellation through consent of the parties was cognizable only in a court of chancery. The accounting, regardless of its complexity, and the damages sought were incidental to the primary relief of rescission. Based upon the evidence before him, the Chancellor in the exercise of his discretion granted both the primary and incidental relief. An examination of the record fails to reveal any abuse of that discretion. We are not here faced with the situation considered in the Miller case[7] wherein the sole ground upon which equity could relieve failed in proof and the respondent forthwith moved for dismissal grounded upon a failure of jurisdiction.
The only remaining question concerns whether defendant, appellant here, raised the issue of jurisdiction before the Chancellor so as to save his right to attack that court's jurisdiction in this Court on the ground of adequacy of plaintiff's remedy at law.
The only action taken by defendant at trial that could be considered to have challenged the Chancellor's jurisdiction over the subject matter was his motion to dismiss the cause "for failure to state a cause of action." If this motion was not sufficient for that purpose a fortiori appellee must prevail.
Rule 1.7(b), Florida Rules of Civil Procedure, 30 F.S.A., provides that applications for orders addressed to the court shall be by motion and "shall state with particularity the grounds therefor." Further, the Supreme Court of Florida has held, as recently as Connolly v. Sebeco, Inc.,[8] that a motion to dismiss for failure to state a cause of action admits all matters well pleaded and serves only to test the sufficiency of the pleadings. It must necessarily follow, therefore, that such a motion is not sufficient to challenge the court's jurisdiction as affected by the proofs. On the contrary, it tends toward an admission that the subject matter was in fact within the court's jurisdiction. Furthermore, the plaintiff and defendant having each invoked *697 the jurisdiction of the equity court, the defendant places himself in an untenable position now to object to the jurisdiction of a court whose aid he affirmatively sought. Certainly the defendant, having by his own actions waived any right he may have had to a jury trial, could not at this late date urge that the Chancellor was without jurisdiction to hear and pass upon his counterclaim and that this claim should have been determined in a new or independent suit at law.[9]
Having failed to interpose a timely challenge to the Chancellor's jurisdiction to grant the relief sought by appellee, appellant cannot now be heard to attack the decree affording that relief merely because there might have been another remedy available through recourse to a court of law.
Accordingly, the decree appealed from should be and the same is hereby affirmed.
THOMAS, ELWYN, Associate Judge, concurs.
STURGIS, Chief Judge (dissenting).
I am obliged to dissent from the majority opinion of affirmance because I believe the chancellor was in error, in view of his findings of fact, to retain equity jurisdiction and enter the final decree wherein the only relief granted is a money judgment predicated on breach of a simple contractual relation of a type traditionally triable in a court of law.
While I seriously question the sufficiency of the complaint to state a cause for equitable relief, I am satisfied, and the chancellor's findings confirm, that the facts are inadequate to produce that result. Both the complaint and the proofs show nothing more than (1) dissatisfaction of the plaintiff with the financial consequences of her venture under the contract, (2) a persistent effort on plaintiff's part to be relieved of her obligations thereunder (as an incident to which she complained of the condition of an item of equipment known as a Dairy Queen Freezer), (3) facts establishing that the freezer was not in first-class condition at the commencement of the lease, as required by an implied warranty of the defendant, but that it was regularly used by plaintiff in her business for a substantial period of time  thus resulting in no more than a partial failure of consideration , (4) facts from which a jury (or judge if authorized to try the facts) could have determined that the parties agreed to terminate  not cancel  the contract, and (5) the uncontested fact that plaintiff owed defendant $904 for rent and supplies under the contract, which she offered to off-set against her claim for a refund of a $3,000 deposit made with defendant pursuant to the contract.
The relief sought by plaintiff's prayer is as follows:
"(A) A Decree of this Court setting aside the Lease attached hereto as Plaintiff's Exhibit `A' and declaring the same to be null and void for failure of consideration.
"(B) That the Court will Decree an accounting from the Defendant to your Plaintiff as to all monies owed to your Plaintiff under the terms of the said Lease.
"(C) A Decree of this Court entering Judgment in behalf of your Plaintiff against the Defendant in the sum of Two Thousand Ninety-Six Dollars ($2,096), as the balance due to Plaintiff on said $3,000 deposit, together with such sums as Plaintiff expended upon the defective equipment of Defendants trying to put the same in useable condition, together with such sums as Plaintiff lost because of milk and mix ruined because of defective equipment, together with interest and cost.

*698 "(D) That your Plaintiff may have such other and further relief as to the Court may seem meet and proper."
The defendant (appellant) seasonably moved the court to dismiss the complaint on the ground that it failed to state a cause of action, and upon denial thereof reincorporated the motion in his answer, thus twice presenting and insisting, by inescapable inference, on his right to jury trial. The second motion was denied by the final decree. The defendant also incorporated in his answer a counterclaim for damages on account of an alleged breach of the lease by the plaintiff.
The chancellor heard the proofs and made the following findings of fact:
"1. That while there was no overreaching or fraud on the part of the defendant in procuring the execution of the Lease by plaintiff, the Court is of the opinion that there is not only an implied warranty of fitness as to the machinery, which included the Dairy Queen patented freezer upon which the operation of the business was based, as contemplated by the Lease, but the defendant expressly warranted that the machinery and equipment would be in first class condition at the beginning of the term of the Lease. Once the machinery and equipment was placed in first class condition, the duty would be upon the plaintiff to maintain the same. However, the Court finds from the testimony that the machinery was never placed in first class condition.
"2. When the defendant learned of plaintiff's desire to give up the Lease, defendant advertised in newspapers to find a new operator, and when he located a new operator he notified the plaintiff, by telegram, of the date of arrival of the new operator, thereby allowing plaintiff to make other plans for her livlihood (sic). The Court finds that the defendant thereby acquiesed (sic) in the cancellation of the Lease by the plaintiff.
"3. The Court is of the opinion that the plaintiff is entitled to a refund by the defendant of the Three Thousand ($3,000.00) Dollars deposit, less credit in the sum of Nine Hundred, Four and no/100 ($904.00) Dollars, which the Court finds to be due from the plaintiff to your defendant."
Upon these findings the following judgment was rendered:
"Ordered, Adjudged and Decreed that defendant's Motion to Dismiss be and the same is hereby denied.
"It is further Ordered, Adjudged and Decreed that the plaintiff, Dorothy C. Henderson, do have and recover of and from the defendant, Kenneth J. Ganaway, the sum of Two Thousand Ninety-Six ($2,096.00) Dollars, together with costs, which are hereby taxed in the sum of $16.90, for which sums Judgment is hereby entered for the plaintiff against the defendant, and for all of which let execution issue."
It is my opinion that the findings of fact and judgment thereon completely negative every premise upon which, as a matter of law, a court of equity might have based jurisdiction to enter the final decree in this cause, as distinguished from its unquestioned jurisdiction over the parties and subject matter. The pivotal point upon which I consider the conclusions of the majority untenable is its failure to recognize and apply that distinction.
Jurisdiction to grant relief in equity, as distinguished from jurisdiction over the parties or subject matter, depends not only on the existence of pleadings that state grounds for relief of a nature cognizable in a court of equity, but finally and essentially upon the existence of facts establishing at lease one premise upon which such relief is grantable. Gentry-Futch Co. v. Gentry, 90 Fla. 595, 106 So. 473; Jansik v. Studstill & Hollenbeck, Inc., 153 Fla. 870, 16 So.2d 165; Amphitrite Corp. v. City of Ft. Lauderdale, 147 Fla. 497, 3 So.2d 150.
*699 There is nothing in the decree, the briefs before this court, or the decision of the majority remotely suggesting that the facts upon which the money judgment depended were sufficient, standing alone, to entitle plaintiff to relief in equity; neither is it contended that defendant's counterclaim in itself lays a predicate for such relief. One must therefore turn elsewhere in the chancellor's findings to discover whether there were facts sufficient to bottom the decree.
As I understand the majority opinion, it is premised on the proposition that the record on appeal conclusively shows: (1) The presence in the findings of the chancellor of sufficient facts upon which to grant relief of a character cognizable in equity, coupled with the granting of such relief, that is, cancellation of the subject contract. (2) An implied waiver by the defendant of his right to a jury trial arising out of the fact that he filed a counterclaim in the cause. (3) Estoppel of the defendant to question equity jurisdiction because he failed to take affirmative action for the transfer of the cause to the law side.
As to the first premise, the writer has labored in vain to find that the decree accorded any relief whatsoever that is recognizable only by a court of equity or as to which it has concurrent jurisdiction with a court of law. I must, therefore, respectfully demur to the holding of the majority that the chancellor decreed cancellation or rescission of the subject contract. And while it is elemental that the remedy of cancellation or rescission of a written instrument by operation of law is available only in a court of equity, I demur to the holding of the majority that cancellation or rescission "by consent of the parties" is, in the absence of other facts upon which relief in equity can be predicated, sufficient to provide jurisdiction of a court of equity to enter such decree. If the parties have formally consented, their formal act speaks for itself. If the consent is to be implied by virtue of acts working an estoppel, or otherwise, and such acts are themselves in dispute, as in the case on appeal, the issue depends on the determination of a question of fact. And under our system of jurisprudence it is the exclusive province of a jury to resolve such questions if either of the litigants so desires and indicates.
It is my contention, as I will endeavor to show, that the facts before the chancellor and his findings thereon  with which I am in agreement (except for the use of a word, hereinafter explained)  do not permit the inference that the decree operated to cancel or rescind the subject contract, and that it did not purport to do so; and further, that being the case and no other equitable relief having been projected by the decree, that the money judgment contained therein should be voided.
The chancellor found "that there was no over-reaching or fraud" on the part of defendant. It is therefore unnecessary to labor the elementary rule that fraud alone is not a sufficient basis for cancellation or rescission of a contract. A close scrutiny of the within quoted findings and judgment clearly reveals that equitable relief of that character was not granted in this cause  that the decree neither cancels nor rescinds the subject contract.
It is obvious that the parties to the contract did not have the right unilaterally to cancel or rescind it, though they unquestionably had the right to terminate it by mutual consent. Whiteside v. United States, 93 U.S. 247, 23 L.Ed. 882. A party who materially breaches his contract impliedly extends to the party not in default an invitation to terminate (cancel) the contract, and suit for the breach is in itself an acceptance of the offer. A contract may be terminated by conduct as well as by words. Mark v. Stuart-Howland Co., 226 Mass. 35, 115 N.E. 42, 2 A.L.R. 678.
It is a common fault of pleaders and courts to use the terms "rescission" and "cancellation" interchangeably. In its true aspect, the term "rescission" should be confined to the act of a court of equity in setting aside, as of no legal effect, an agreement or a part of an agreement that was *700 actually consummated by the contracting parties but which, because of some compelling equity not known or evident at the time of its making, requires the undoing (rescission) thereof. The term "cancellation", on the other hand, implies the destruction, legally and often physically, of evidence tending to show the existence of a legal relation or result that never in fact existed, or which, by change of circumstance, no longer exists, and which because of a compelling equity should be erased or destroyed. Thus cancellation of a written document is usually effected by notation on its face, tearing, burning, or some other method indicating destruction of its evidentiary value.
I am convinced by the findings as a whole and the judgment based thereon that the term "cancellation" as used in the final decree is synonymous with "termination". Giving effect to the word "acquiesced", as used in the decree, it must be interpreted as meaning that certain acts of the defendant constitute an implied acceptance of plaintiff's implied offer to terminate the contract. It follows that such implied termination of the contract is no less contractual than if it had been accomplished by a formal document, that in any event, a new contract was created whereby the terminal date of the original contract was modified. The chancellor held to that effect.
Where the contract has been largely carried into execution and engagements of the parties were to be performed in the future and their performance was not made a condition but rested merely in covenant, the breach of them lays the foundation of an action at law, but nothing more. McMillan v. American Suburban Corp., 136 Tenn. 53, 188 S.W. 615, L.R.A. 1917B, 401.
In order to invoke the jurisdiction of equity to secure the cancellation or rescission of a written instrument, some special ground must be shown to take the case out of the general rule that remedy for breach of contract must be sought at law. Mere inadequacy of price, improvidence, surprise, or hardship, unaccompanied by any element of fraud, mistake, or illegality, or even impossibility of performance, will not furnish basis for interposition of equity by way of cancellation or rescission. Borough of Du Bois v. Du Bois City Waterworks Co., 176 Pa. 430, 35 A. 248, 34 L.R.A. 92, 53 Am.St.Rep. 678.
In the absence of fraud or other recognized equitable grounds, partial failure of consideration is not regarded as basis for cancellation or rescission, while total failure of consideration is so regarded. Douglas v. Ogle, 80 Fla. 42, 85 So. 243. The findings and the judgment negative any suggestion that there was a total failure of consideration. The writer does not understand what the authorities have in mind by the term "turpitude of consideration" which is found in International Realty Associates v. McAdoo, 87 Fla. 1, 99 So. 117, 119. The chancellor found that the defendant breached an implied warranty that the leased machinery and equipment were initially in first-class condition. Significantly, the amount of the judgment is the exact amount claimed by the complaint to be due plaintiff from defendant for the difference between the amount of plaintiff's obligations to defendant for rent and purchases of supplies and the amount she deposited with the defendant pursuant to the contract, from which it is clear that the judgment does not award any damages for the mentioned breach of warranty.
The complaint did not allege the existence of complicated mutual accounts as a basis for equitable relief, nor did the findings of the chancellor indicate the existence of or state an account of that nature.
For the reasons stated, I think it is evident that the decree only determined the existence of a contract modifying the terms of the original contract in respect to the terminal date. The only relief granted was a money judgment based upon facts which contained no special equity and for which there is an adequate and complete remedy at law. In my opinion, therefore, the first *701 premise of the majority opinion is incorrect.
As I understand the majority, the second premise upon which it bases equity jurisdiction to enter the decree rests on the proposition that the defendant by the filing of a counterclaim invoked the jurisdiction of the equity court and thereby "waived any right he may have had to a jury trial." Marek v. Patterson, Fla., 75 So.2d 808, and Blanton v. Woodward, 107 Fla. 691, 144 So. 300, are cited in support of this proposition, but I suggest they are not in point.
Marek v. Patterson, supra, was an action at law in which the defendant filed a counterclaim but neither party demanded trial by jury, as they might have done under the rule applying to actions at law. The supreme court only held that in a law action right to trial by jury is waived unless requested by a party to the action.
In Blanton v. Woodward, supra, the defendant in foreclosure attempted to interpose a defense in the nature of a counterclaim, in which he set up an alleged indebtedness of the mortgagee's for personal services rendered by him to mortgagee incident to mortgagee's last illness. Motion to strike the counterclaim was granted and on appeal the supreme court, in affirming this action, held that the plaintiff in foreclosure was entitled to a trial at law of the unliquidated claim that was based upon the independent cause of action.
Rule 1.13(1) Florida Rules of Civil Procedure provides:
"(1) Compulsory Counterclaim. The defendant, at the time of the filing of his answer, shall state as a counterclaim, any claim, whether the subject of a pending action or not, which he has against the plaintiff, arising out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."
This rule of compulsion is an adaptation of former Section 35, Chancery Act, F.S. § 63.35, F.S.A., which required the answer in a chancery proceeding to state any counterclaim arising out of the transaction forming the subject matter of the suit. I am not aware of any statute, rule of procedure, or precedent that casts on the party filing a counterclaim in equity the implication of thereby waiving his right to trial by jury in those instances where the allegations of the complaint upon which equity jurisdiction is based are not borne out by the proofs. If waiver of right to trial by jury is to be inferred and imposed upon one who, after the denial of his motion to dismiss the complaint on a ground that attacks the ultimate jurisdiction of the court to enter a decree in equity on the facts alleged, files a counterclaim in obedience to the compulsory rule that he do so, then the cautious pleader who desires to preserve the right to trial by jury will be forced to the exigency of taking an interlocutory appeal from the order denying such motion. A waiver of right to trial by jury should not be visited upon one who respects the rule. For the reasons stated, the second premise of the majority opinion in this cause appears to me to be unsound.
The third premise upon which the majority supports the subject decree is bottomed on the theory of estoppel, visited on the defendant for his failure to take affirmative action for the purpose of having the cause transferred to the law side. In visiting such estoppel no weight was given to defendant's motions to dismiss the complaint for lack of equity. The first motion to dismiss was denied prior to the filing of the answer and counterclaim; the second, incorporated in the answer, was denied as a part of the final decree. There is no specific rule of practice requiring such affirmative action, nor is there any containing that implication. On the contrary, our supreme court has directly held that a motion to dismiss a complaint on the ground that there is an adequate remedy at law is not recognizable under the modern rules, *702 and that where such a motion is filed it should be treated as an application for transfer of the cause to the law side. Frierson v. Frierson, 110 Fla. 416, 149 So. 18.
I am unable, therefore, to escape the conviction that it is improper to cast the affirmative burden to seek the transfer on a party who, as was the appellant here, is brought into the wrong forum without his consent and is forced to litigate over his objection. In all candor, I suggest that the shoe is on the wrong foot. Since it is the appellee-plaintiff who improvidently filed the suit in the wrong forum, the burden, if any, should rest upon her, rather than the defendant to get her ducks in a row.
The majority interprets Rule 1.39(a) Florida Rules of Civil Procedure, 30 F.S.A., as casting the duty on the parties to an action to initiate its transfer to the law or equity side in those instances where it is filed in the wrong forum. I cannot agree. The rule provides:
"(a) If at any time it appears that an action has been commenced either in equity or at law when it should have been brought on the opposite side of the court it shall be forthwith transferred to the proper side and proceeded with without interruption. In such case the court, without notice, may enter an order noting that the case was brought on the wrong side of the court and further ordering the clerk to docket the case on the proper side. The case shall proceed thereafter as though it were originally instituted on the proper side of the court and no further amendments shall be necessary to change phraseology in the pleadings so far as this error is concerned. The case shall proceed as though originally instituted on the proper side of the court."
This rule squarely places the mandatory duty on the court to transfer the cause to the proper forum. The fact that a litigant may by appropriate action trigger the court's responsibility is beside the point. He should suffer no penalty for failure to do so.
The majority seems to rely on Rule 1.7(b) F.R.C.P. in imposing the estoppel. The rule provides:
"An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion."
In dealing with this rule the majority restates the elemental proposition that a motion to dismiss for failure to state a cause of action admits all matters well pleaded and only tests the sufficiency of the complaint. I feel that except in a very detached sense this rule has no relation to that general type of motion traditionally known as a "motion to dismiss." It is true, of course, that a motion to dismiss, like any other motion, is designed to result in "relief" or an "order" of court. In its usual connotation, however, the term "motion to dismiss" means to the practitioner that particular type of motion which under the new rules has taken the place of the former common law demurrer  a motion testing the legal sufficiency of a complaint to state a cause of action. Moreover, all the ingenuity, resourcefulness and imagination of a pleader who might strive under that rule to state "with particularity" grounds challenging the legal sufficiency of a complaint in equity could have no greater impact than is found in the simple, single, stark ground used by the defendant in this cause, viz.: "That the complaint fails to state a cause of action upon which relief can be granted."
In Frierson v. Frierson, supra [110 Fla. 416, 149 So. 18], the complaint alleged failure of consideration in that defendants did not render certain services constituting the *703 consideration for a deed, and sought rescission and cancellation of the deed and an accounting for specific sums of money alleged to have been advanced by the plaintiffs to the defendants. A demurrer to the complaint was overruled, but the suit was ultimately dismissed by the chancellor because the proofs failed to establish the alleged right to relief in equity. As in the case on review, the chancellor did not enter an order transferring the cause to the law side under the provisions of Section 75 of Chapter 14658, Acts of 1931, then in effect and from which the above cited Rule 1.39 (a) F.R.C.P. to the same general effect is derived. Said Section 75 was adapted from Federal Equity Rule No. 22. On appeal, the supreme court held that the demurrer should have been sustained, not only as to the attempted rescission and cancellation of the deed, but also as to the attempted accounting. In so doing, it adhered to the settled law of Florida that equity will not order cancellation of contracts because of failure of consideration, or order an accounting where the allegations of a complaint show on its face that the amounts claimed were fixed and certain and were therefore recoverable, if at all, in a suit at law. Both of these circumstances are present in the case now under review. The supreme court further held that:
"* * * if the bill of complaint and the proofs submitted thereunder show that the complainants were not entitled to relief in equity but that they might have an action at law, the court should have made an order transferring the cause to the law docket for disposition under the provisions of section 75 of chapter 14658, Acts of 1931." (Emphasis supplied.)
The court also drew the analogy between the federal and state rules of procedure governing transfer of causes and quoted with approval Collins v. Bradley, D.C., 227 F. 199, 201, in which it was held that a motion to dismiss on the ground that plaintiff has an adequate remedy at law is not recognizable under Federal Equity Rule No. 22 [as then in effect] and that "defendant's motion to dismiss may be taken as a motion to transfer the case to the law side, if the remedy at law is adequate." See also: Deas v. Burnham, Fla., 65 So.2d 297; Brass v. Reed, Fla., 64 So.2d 646; Nunn v. Florida Air Conditioning & Refrigeration Corp., 143 Fla. 648, 197 So. 388.
The course I think this court should have pursued is that adopted on the appeal in the recent case of Commercial Engineering & Contracting Co. v. Beals, Fla.App., 99 So.2d 882. There the defendant filed an answer incorporating a motion to dismiss the complaint and brought the same on to be heard on motion for decree on the pleadings pursuant to Rule 1.11(c) F.R.C.P. The chancellor dismissed the complaint with prejudice. The Third District Court of Appeal sustained the holding of the chancellor to the effect that the complaint failed to show a basis for equitable relief and sustained his refusal to retain jurisdiction in equity for trial of plaintiff's claim for a money judgment. It held the chancellor in error, however, for dismissing the complaint, stating that it was his duty under Rule 1.39(a), supra, to transfer the action to the law side, and on that basis remanded the cause for further proceedings.
Braz v. Professional Insurance Corp., Fla.App., 101 So.2d 594, was a case in which the chancellor granted with prejudice a motion to dismiss a complaint in equity. The motion was based on the grounds of (1) laches, (2) res judicata, (3) failure to attach certain documents to the complaint, and (4) failure of the complaint to state a cause of action. The order of dismissal did not specify the ground upon which it was predicated. The Third District Court of Appeal held that the first three grounds of the motion were without merit, but that the fourth ground was adequate to require the circuit court to transfer the cause to the law side under the provisions of Rule 1.39(a) F.R.C.P. A fortiori, when a complaint states a cause of action cognizable in equity but the proofs adduced thereon fail to establish facts upon *704 which a decree affording relief in equity may be predicated, yet do show facts appearing to entitle the claimant to relief at law, it follows that under the rule the court should, without any affirmative act on the part of the litigants, transfer the cause to the law side.
Paragraph (a) of Rule 1.39 F.R.C.P. is limited to transfers of causes from the equity to the law side, or vice versa, in the same court in which the action is brought. Paragraph (b) of the rule governs transfer from the court in which a cause is improvidently filed to another court in the same county having jurisdiction of the cause. It is important to note that in referring to transfers under paragraph (a) the word "shall" is used, when paragraph (b) uses the word "may".
The rationale of paragraph (a) of the rule and of the decisions construing it is: Where a complaint is sufficient as a matter of law and contains allegations which if established by the evidence would entitle the complaining party to relief on the side of the forum [law or equity] in which the complaint is filed, and where process is had upon the parties, then the forum in which the complaint is filed is vested (a) with jurisdiction over the parties and subject matter of the cause and (b) with color of jurisdiction to provide the relief sought. It must then proceed to the taking of proofs in order to ascertain if actual jurisdiction exists to provide relief on that side of the forum. If the complaint fails, as a matter of law, to state a cause of action cognizable on that side of the forum in which it is filed but does state a cause of action cognizable on the other side, it is the duty of the judge, without affirmative action on the part of the litigants, to transfer the cause to the proper side. In final analysis, jurisdiction to enter a decree in equity or a judgment at law, as distinguished from jurisdiction over the subject matter and parties to a cause, depends strictly on the presence of proofs establishing the right to relief on that side of the forum in which the cause is pending. Where it is discovered, as a result of the proofs adduced, that relief is not available on that side of the forum in which the cause is pending, but the pleadings and facts indicate that both remedy and relief is available on the alternate side of the forum, it is the duty of the judge, without affirmative action on the part of the litigants, to transfer the cause to the proper forum.
If the principles of equity jurisdiction, pleading, and practice as enunciated by the controlling opinion and applied to the facts in this case are adhered to, the lawyer will not be worth his salt who cannot frame a complaint that will enable the chancellor, despite the ultimate proofs, to ignore the fundamental right of trial by jury in the vast field of typical actions for breach of contract.
For the reasons stated, I would have reversed the decree with directions to transfer the cause to the law side.

On Rehearing
PER CURIAM.
Petition for rehearing denied.
WIGGINTON, J., and THOMAS, ELWYN, Associate Judge, concur.
STURGIS, Chief Judge (dissenting).
Appellant's petition for rehearing presents the fact, heretofore escaping my attention, that after the chancellors' findings were made known there remained no opportunity for appellant to take affirmative action for transfer of the cause to the law side. The findings of fact, the denial of the motion to dismiss contained in the answer, and the money judgment, were all embodied in the final decree. It would have required an uncommon degree of clairvoyance to anticipate that result. Yet the rule enunciated by the majority herein makes it necessary, if defendant is to avoid the implication of waiver or estoppel of *705 right to trial by jury, to take affirmative action for transfer to the law side immediately upon conclusion of plaintiff's evidence in chief.
This court recently held that a motion for a directed verdict is not available in equity practice. In re Mollard's Estate, Fla.App., 101 So.2d 880. The rationale is that in proceedings where the judge is trier of both law and fact such motion is meaningless because he has the duty to decide for the movant if the facts will not support a judgment or decree against him.
The party aggrieved by an order based on affirmative action seeking transfer of a cause to the law side having the right to appeal, it follows that where the proofs fail to establish a basis for relief in equity but indicate that relief at law is available, a motion to transfer has the identical effect of a motion for a directed verdict in that it tests the sufficiency of the facts to warrant entry of a decree in equity. The motion is useable, therefore, as an indirect method by which to make available the procedure that is proscribed by the mentioned holding in the Mollard case, supra.
In Miller v. Rolfe, Fla.App., 97 So.2d 132, 135, we held that it was error for a court of equity to proceed with a suit for specific performance in which the proofs reflected that after filing suit the complaining party had conveyed the subject property, thus putting it beyond his ability to specifically perform, and we said:
"On this state of the record the Chancellor properly could and should have on his own initiative or on motion of either party, entered an order transferring this cause to the law side of the court for jury trial." Citing Rule 1.39, 1954 F.R.C.P. (Emphasis supplied.)
While the defendant's answer in that case contained a defense predicated on plaintiff's action, such defense only served to invite the court's attention to the fact that it was without jurisdiction to enter a decree granting equitable relief.
Rules of practice and procedure in actions at law that permit the weight and sufficiency of the evidence to be tested prior to verdict are peculiar to jury trials. They have no application to equity practice and procedure. The fundamental right to trial by jury must be preserved against all hazards. It should not be jeopardized on the platitude that by filing a counterclaim and presenting evidence thereon a party gambles his chance of getting a favorable decree and will not be heard to protest when the result is unfavorable. At every stage that he had an opportunity to do so the appellant in this cause insisted on lack of equity jurisdiction to grant the relief sought. Those protests, in the nature of the motions to dismiss, were sufficient devices on which to found his constitutional right to have a jury decide the issues.
Bowing to the majority, I would create an exception to the rule they enunciate, basing it on the fact that appellant was not afforded a reasonable opportunity to take affirmative action for transfer to the law side. Accordingly, I would have granted the petition for rehearing.
NOTES
[1] Willis v. Fowler, 102 Fla. 35, 136 So. 358.
[2] Peavy-Wilson Lumber Co. v. Brevard County, 159 Fla. 311, 31 So.2d 483, 172 A.L.R. 168.
[3] Holmberg v. Hardee, 90 Fla. 787, 108 So. 211.
[4] International Realty Associates, Inc., v. McAdoo, 87 Fla. 1, 99 So. 117.
[5] 51 Fla. 614, 41 So. 545, 549.
[6] 43 Fla. 1, 29 So. 442; See: Williams v. Wetmore, supra, Note 5; Rivas v. Summers, 33 Fla. 539, 15 So. 319.
[7] Miller v. Rolfe, Fla.App. 1957, 97 So.2d 132.
[8] (Fla. 1956), 89 So.2d 482. See Stone v. Stone (Fla.App. 1957), 97 So.2d 352.
[9] Cf.: Marek v. Patterson, Fla. 1954, 75 So.2d 808; Blanton v. Woodward, 107 Fla. 691, 144 So. 300.