## Penn Park, Inc. v. Falls Township
## Authority

*Leonard K. Sokolove,* for plaintiff.

*Curtin & Heefner,* by *Edward I. Dobin,* for defendant.

GARB, J., February 17, 1970.—In this action in equity, plaintiff seeks either a rescission or a reformation of a certain contract entered into between it and defendant water and sewer authority[1] as well as an injunction against the collection of a 25 percent penalty for the unpaid water consumption and sewer facility use. Defendant has filed preliminary objections in the nature of a motion for more specific pleading, an assertion of an adequate remedy at law and a demurrer. The matter was argued before the court en banc and we dispose herein of the preliminary objections.

The complaint alleges that plaintiff is the owner of certain apartments located in the Township of Falls and that defendant is a municipal authority formed under the Pennsylvania Municipality Authorities Act of 1945. It is alleged that by virtue of an agreement between the parties dated November 24, 1965,[2] defendant agreed to supply water to the then proposed apartment development of plaintiff in consideration for which plaintiff was to build and construct the necessary water line to connect such project to the existing water lines of defendant and that defendant was to cause the Board of Supervisors of Falls Township to create a water district encompassing the properties of plaintiff. It is further alleged, and the contract aforesaid would apparently confirm, that it was

---

[1] Although the complaint specifically requests a rescission of the contract, the language of the pleading and demand for relief sound as well in reformation as in rescission.

[2] The agreement is annexed to the complaint as an exhibit and is incorporated by reference therein.

agreed that defendant was to afford plaintiff a certain refund based upon the revenues derived from the sale of water to the properties formerly owned by plaintiff, which refund was to serve the purpose of reimbursing plaintiff the cost of construction of the aforesaid water lines. It is further alleged that plaintiff did construct the necessary water lines at a cost of $51,704.84. The complaint asserts further, and is once again borne out by the provisions of the contract, that the rate for the consumption of water for garden apartments initially would be as set forth in the agreement. The agreement further provided that the authority agreed "that the rate for garden apartments *initially* will be as follows and will remain at this level *so far as economically feasible.*" Thereafter followed a proposed rate structure. (Italics supplied.)

The gravamen of plaintiff's asserted injury arises from the allegation that after the execution of the agreement and subsequent to the construction of the water lines and the apartment complex, defendant authority raised the rates to such an extent that somehow plaintiff will not be able to recoup its investment in the construction of the water lines. It is further asserted that an inequity results from the fact that the water rate is based upon the total number of apartment units without regard to the number of vacancies, and it is lastly contended that plaintiff has refused to pay the bills submitted for water consumed and, therefore, has been assessed a penalty of 25 percent which plaintiff contends is unreasonable. All of the foregoing is encompassed in the first count to the complaint.

The second count of the complaint asserts simply that defendant supplied sewer service to plaintiff originally charging $7 per occupied dwelling unit a quarter. It is alleged that this rate was later modified to provide for $8 per quarter on all dwelling units irrespective of whether they were occupied or not. The

foregoing rate of $8 was subsequently raised to $10.92. It is further asserted that a 25 percent penalty has been charged as a result of plaintiff's refusal to pay the aforesaid sewer bill and the further bald assertion that the foregoing sewer rate and penalties are unreasonable and inequitable.[3]

Directing our attention to count one of the complaint first, it would appear to be plaintiff's position, essentially, that by virtue of the raise in rates for the consumption of water and the application of the rate to all apartment units irrespective of whether they are occupied or not, it would be unable to recoup its total investment from the construction of the water lines and that therefore it has lost the value of its bargain. Plaintiff, therefore, asks that the contract be rescinded or reformed by the fixing of the rates themselves by this court.

Accepting as true all facts which are well and properly averred in the complaint (Adams v. Speckman, 385 Pa. 308 (1956)), plaintiff has failed to plead sufficient facts upon which the court can decree a rescission of the contract. The powers of a court of equity to compel cancellation or rescission of a contract are exceptional. The purpose of the court is never to interfere with the freedom of contract nor with the proper legal liability created by the contract between the parties. This power of a court of equity will be exercised only in clear cases and only where there is a showing of fraud, mistake or lack of consideration: Du Bois Borough v. Du Bois City Water Works Co., 176 Pa. 430 (1896); Gale Industries, Inc. v. Bristol Farmers Market & Auction Company, 16 Bucks 520 (1967). There is no redress against an improvident contract and even though a contract be unconscionable

---

[3] It is not asserted in the complaint nor does it appear in the contract that the contract between the parties covered the sewer rate at all.

or unreasonable, it will not be set aside unless brought about by fraud, accident, mistake or lack of consideration: Singer's Estate, 217 Pa. 295 (1907); Cummings v. Lehigh Brickface, Inc., 11 Cumberland 70 (1960). A party cannot avoid his contract because it may become burdensome: Pennsylvania Railroad Co. v. Pennsylvania-Ohio Electric Co., 296 Pa. 40 (1929). Inadequacy of price, improvidence, surprise and mere hardship are insufficient to cause a rescission of a contract. There must be fraud, mistake or illegality: Du Bois Borough v. Du Bois City Water Works Co., supra; Appeal of Lynch, 97 Pa. 349 (1881). Clearly, fraud, accident or mistake have not been alleged in this complaint. They are not set forth with the specificity required by Rule of Civil Procedure 1019(b) (see Bata v. Central-Penn National Bank of Philadelphia, 423 Pa. 373 (1966)), nor, in fact, have they even been asserted generally as conclusions of law. We do not perceive, therefore, that it is on this basis that plaintiff founds its request for rescission.

At oral argument it became abundantly clear that plaintiff's theory is based upon failure or lack of consideration. Our result is the same regardless of whether plaintiff claims lack or failure of consideration.[4] The total lack or want of consideration will justify a rescission of a contract where the contract is merely executory. Where, however, a contract has been fully executed by the parties, only a showing of fraud or palpable mistake forms a basis upon which it can be rescinded: Rockafellow v. Baker, 41 Pa. 319 (1861). In any event, the complaint does not evidence a lack or want of consideration. Want of consideration embraces transactions wherein none was intended to pass while

[4] We are uncertain as to which forms the basis of plaintiff's theory.

failure of consideration implies that a valuable consideration was contemplated: Conrad's Estate, 333 Pa. 561 (1938); Killeen's Estate, 310 Pa. 182 (1932). The complaint clearly shows that defendant did permit plaintiff to connect to its water lines, caused the township to create a water district and sold plaintiff water. Therefore, the inference is plain that consideration was contemplated and at least to that extent that it passed.

It is plaintiff's contention that the contract was entered into with mutual contemplation of the water rates which it maintained would have afforded plaintiff the opportunity to recoup its investment. However this may be, plaintiff is still confronted with the plain language of the contract to which it subscribed. Although, concededly, paragraph 6 of the contract includes a schedule of apartment rates for the use of water, that very same section provides that those rates are the rates which shall be charged *initially* and only that they will remain at that level "so far as economically feasible." There is no allegation that those were not the rates initially charged nor that the raise in rates was not one dictated by economic necessity. There is nothing in the complaint to show that plaintiff got anything more or less than it bargained for in this contract. In fact, one may clearly infer from the contract that it was contemplated by both parties that there was a very real possibility that plaintiff may not recoup all of its investment. Paragraph 7D of the contract provides that in the event that the said 10 annual payments[5] have been made and the total sum repaid thereunder shall not equal the sum which plaintiff shall have invested in construction of the water

---

[5] A previous subsection of this paragraph provided for reimbursement to plaintiff for its investment by virtue of a refund on certain water revenues to be paid in 10 annual installments.

lines, then and in that event plaintiff shall not be entitled to any further payments. Therefore, the parties recognized the possibility that reimbursement by defendant may fall short of plaintiff's total investment. We are, therefore, unable to perceive plaintiff's argument of lack or failure of consideration for the contract such as to support a rescission of this contract. Although plaintiff may have made a poor bargain, that does not afford it the equitable relief of rescission.

Succinctly stated, plaintiff's request for reformation of the contract must meet the same fate as its request for rescission. Courts of equity have the power to reform written instruments only where there has been a showing of fraud, accident or mistake: Kutsenkow v. Kutsenkow, 414 Pa. 610 (1964), and Evans v. Marks, 421 Pa. 146 (1966). By virtue of reasons elucidated heretofore, plaintiff has failed to plead sufficient facts in this complaint to support a claim for reformation.

Although we have serious doubts, in view of what we consider plaintiff's theory to be, whether plaintiff can sufficiently and adequately plead a proper case for rescission or reformation, in view of the fact that defendant has filed a motion for a more specific pleading, we will afford plaintiff the opportunity to file an amended complaint, if it can.

If, in fact, plaintiff is unable or fails to file an amended complaint of such a nature as to support a cause of action for rescission or reformation of the contract, nonetheless the demurrer should not be sustained and the complaint dismissed. To the extent that plaintiff is questioning the reasonableness or uniformity of the rates fixed by the authority, it has an adequate remedy at law. By the provisions of the Municipality Authorities Act of May 2, 1945, P. L. 382, sec. 1, et seq., as amended by the Act of October 7, 1955, P. L. 671, sec. 1, 53 PS §306B(h), any person

questioning the reasonableness or uniformity of any rate fixed by any authority may bring suit against the authority in the court of common pleas wherein the project is located. This is an exclusive remedy vested in the court of common pleas as a common-law court and not as a chancery court with equity powers. Therefore, there is no jurisdiction in the court of equity, but plaintiff, notwithstanding, has an adequate remedy at law: Calabrese v. Collier Township Municipal Authority, 430 Pa. 289 (1968). Therefore, this matter should be certified to the law side of this court for appropriate disposition under the provisions of the Municipality Authorities Act.[6]

With regard to the 25 percent penalty, on the present record, that question should likewise be certified to the law side of the court in the event that plaintiff is unable to file an amended complaint to support its claim for equitable relief. There is nothing in this record to indicate the derivation of this penalty, and we may assume, therefore, that it results from the rate-making powers of the authority. The fact of the preliminary objections themselves admit the imposition of this penalty. Although defendant asserts that the bald imposition of the penalty is not a correct statement of the facts and that the 25 percent represents only the ceiling of a graduated schedule of penalties, nothing to support this assertion is on the record and we may not take judicial notice, as requested by defendant, of the ordinance enacted by the Township of Falls, a second class township: Eckert Appeal, 74 York 49 (1960), and The First Pennsylvania Banking and Trust Company v. Zoning Board of Adjustment, East Whiteland Township, 15

---

[6] We do not decide whether plaintiff has a cause of action at law based upon its contract.

Chester 151 (1967). See Act of April 8, 1941, P. L. 16, sec. 1, 28 PS §301.

With regard to the second count of the complaint, it is purely and simply an assertion of unreasonableness of the sewer rates and the 25 percent penalty. There being no contract allegedly supporting this claim for relief, the request for rescission and reformation is obviously inapplicable, and we would perceive that the only preliminary objection directed toward the second count is the preliminary objection in the nature of an assertion of an adequate remedy at law. Therefore, and inasmuch as we perceive that this count contains only an assertion of the unreasonableness of the sewer rates charged by the authority, we will direct that the second count likewise be certified to the law side of the court for disposition under and pursuant to the provisions of the Municipality Authorities Act if the first count is so certified. On the other hand, while the present complaint does not so state, conceivably the sewer rates may be so inextricably connected with the water rates that a court of equity may have incidental jurisdiction of these issues if the first count is made to sound properly in equity. See Maloney v. Glosser, 427 Pa. 548 (1967). We cannot make this determination on the present record. We can only decide whether these two causes of action must be severed when we are presented with an amended complaint, if there is to be one.

Accordingly we enter the following

## ORDER

And now, to wit, February 17, 1970, it is hereby ordered, directed and decreed that leave is granted to plaintiff to file an amended complaint consistent with the within opinion within 30 days of the date hereof; upon failure of the plaintiff to file an amended com-

plaint as aforesaid within the said period of 30 days, this complaint shall be certified to the law side of the court and defendant shall have leave to file an answer thereto within 20 days of that date.